# Richmond

## Thelma Chappell v. Martha C. White.

May 4, 1944.

Record No. 2759.

Present, All the Justices.

The opinion states the case.

*Breeden & Hoffman*, for the plaintiff in error.

*T. E. Gilman* and *William G. Maupin*, for the defendant in error.

Hudgins, J., delivered the opinion of the court.

On July 10, 1942, at about 6:30 p. m., Mrs. Thelma Chappell, driving her husband's car, with her two small children on the front seat and her three cousins (Mrs. Margaret F. Brown, with a baby in her lap, Mrs. Katie E. Rowe and Mrs. Martha C. White) on the back seat, was returning to Portsmouth from a family reunion at Franklin, Virginia. The car turned over on Route 58, approximately one mile west of Holland, Virginia. Mrs. Martha C. White, who was then 64 years of age, instituted this action and obtained a verdict and judgment for $7,500 for serious and permanent injuries sustained by her. To that judgment, this writ of error was granted.

Defendant contends that the evidence is not sufficient, as a matter of law, to convict her of gross negligence. This contention presents the problem of applying the doctrine of gross negligence to specific facts.

The highway was 30 feet wide, divided into three traffic lanes by two white lines. The dirt shoulders on each side of the hard surface were four to six feet wide. The edges of the shoulders were level with the hard surface. The

highway was level and straight for several hundred yards
east and west of the scene of the accident. There was no
other traffic coming or going in either direction.

Defendant was driving a practically new 1942 Chieftain
Pontiac. Its mechanism, including brakes and steering gear,
was in perfect condition. The driver and passengers stated
that the car was operated at a reasonable rate of speed, esti-
mated to be between 35 and 45 miles an hour, on its proper
side of the highway. When the passengers on the back
seat heard Mrs. Chappell cry "Oh!" they looked up and saw
that the car had crossed to the extreme left side of the high-
way, traveling at undiminished speed. At the same moment
they saw Mrs. Chappell straightening up in the driver's seat
as if she had been leaning over to her right, with her right
hand in the act of grabbing the top of the steering wheel.
Defendant concedes that this was the location of the car
when she became. conscious of the danger, and that she
neither applied her brakes nor attempted to turn the car
towards the center of the highway, but permitted it to
travel 75 to 90 feet diagonally across the left shoulder of the
highway before it turned over. and came to rest at the bot-
tom of the ditch six or more feet from the hard surface. No
skid marks were observed. While the surface of the high-
way was wet from recent rain, it was not proven to be
slippery. As one witness stated, the hard surface was com-
posed of "black top gravel road, and it is not awful slick."

Reasonable men may differ as to whether or not these
facts and the inferences therefrom constitute gross negli-
gence. It follows that a jury question is presented.

Many Virginia cases and cases from other jurisdictions on
the different degrees of negligence are cited in the able briefs
filed by opposing counsel. The court is familiar with most
of the cases, as it has reviewed them many times in discuss-
ing the identical question now under consideration.

Mr. Chief Justice Campbell, in *Young* v. *Dyer*, 161
Va. 434, 440, 170 S. E. 737, speaking for the court, said:
"A mere failure to skilfully operate an automobile under all
conditions, or to be alert and observant, and to act intelli-

gently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinarily prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to, wanton or reckless conduct, or constitute culpable (gross) negligence for which defendant would be responsible to an invited guest."

In *Thornhill* v. *Thornhill*, 172 Va. 553, 563, 2 S. E. (2d) 318, we held: "Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. * * * It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is, or ought to be, known to have a tendency to injure.' "

We stated the same principle in *Wright* v. *Osborne*, 175 Va. 442, 445, 9 S. E. (2d) 452, in the following language: "Stated in somewhat different terms, gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. There is no sharp, well-defined, dividing line between simple negligence and gross negligence. The distinction is one of degree."

Mr. Justice Spratley, speaking for the court in *Jones* v. *Pasco*, 179 Va. 7, 11, 18 S. E. (2d) 258, 138 A. L. R. 1385, said: "The evidence in this case is that there was no collision with another automobile. There was naught to show that there was anything in the nature of the road or a defect in the car to cause the accident. The defendant was quoted as saying that it occurred because she was asleep. There was no other uncontradicted explanation. That she was asleep is the only reasonable explanation, under the circumstances, why the car, under her control, left the wide expanse of a smooth, clear, straight and broad highway and crashed against a tree with such force as to demolish the

automobile and gravely injure one of its occupants. We do not know what speed the car was making at the time of the accident; but any speed was too fast while she was driving asleep or with her eyes closed." To the same effect, see *Lipscomb* v. *O'Brien*, 181 Va. 471, 25 S. E. (2d) 261; *Wright* v. *Swain*, 168 Va. 315, 191 S. E. 611.

The facts in *Koufman* v. *Feinberg*, 298 Mass. 270, 10 N. E. (2d) 91, were that plaintiff was sitting beside the driver with a suitcase on the floor under her feet. *En route*, while the car was going 35 to 40 miles an hour, defendant, over plaintiff's protest, took the suitcase from under her feet, and put it back of him. As he did so the car ran off the highway and into a tree injuring plaintiff. In holding that the plaintiff was entitled to recover under the doctrine of gross negligence, the court said: "One of the 'more common indicia of gross negligence' is 'deliberate inattention' to the operation of an automobile;" that such "inattention is evidence of 'want of even scant care' within the definition of gross negligence;" that there was evidence of "deliberate inattention" on defendant's part within the meaning of that term as defined by the authorities; and that the case did "not fall within decisions holding that a momentary turning of the eyes from the road is not of itself evidence of gross negligence."*

Defendant's second contention is that the trial court committed error in holding certain statements, alleged to have been made by Peggy Chappell, the 8 year old daughter of defendant, to be a part of the *res gestae.*

There are two versions of these statements. Mrs. Brown, a witness for plaintiff, testified that some fifteen minutes after the accident Peggy, who was the fourth of the seven occupants to get out of the car, was screaming and ex-

---

*For other Virginia cases holding that the evidence was not sufficient to establish gross negligence, see *Hawkins* v. *Sydnor*, 170 Va. 267, 196 S. E. 619; *Grinstead* v. *Mayhew*, 167 Va. 19, 187 S. E. 515; *Kent* v. *Miller*, 167 Va. 422, 189 S. E. 332; *Doub* v. *Weaver*, 164 Va. 96, 178 S. E. 794; *White* v. *Gregory*, 161 Va. 414, 170 S. E. 739; *Tarrall* v. *Tarrall*, 161 Va. 663, 171 S. E. 500; *Osborn* v. *Berglund*, 159 Va. 258, 165 S. E. 410; *Jones* v. *Massie*, 158 Va. 121, 163 S. E. 63; *Boggs* v. *Plybon*, 157 Va. 30, 160 S. E. 77.

claimed, "What is Daddy going to say? What is Daddy going to say? Oh Lord, what is Daddy going to say? If Mother hadn't been getting mud off my shoe, it would not have happened." Plaintiff stated that, before she was taken out of the car, she heard Peggy scream and exclaim, "Oh, Mamma, what is Daddy going to say? What is Daddy going to say? I was the whole cause of it. * * * If I hadn't told Mother to look down at my foot, it would not have happened."

The question of the admissibility of this testimony is not free from difficulty. Peggy, who was called by plaintiff as her own witness, in the absence of the jury denied making either statement. Peggy's mother, the defendant, testified that the child had called her attention to some mud or dirt on her shoe immediately after they had gotten in the automobile and before they reached the hard surface, but said nothing about the mud or her shoe at the scene of the wreck. Mrs. Rowe, a witness for the defendant, said that she did not hear Peggy make any statement at the scene of the wreck. This conflict in the testimony presents a sharp issue as to whether any such statements were made by Peggy.

Neither version of the statements contains a positive statement of any fact. A reasonable inference from Mrs. Brown's version is that defendant had been "getting mud off" the child's shoe, but plaintiff's recollection of what the child said ("I was the whole cause of it. * * * If I hadn't told Mother to look down at my foot, it would not have happened.") is an opinion of the child based on what the child said to her mother and not what her mother did or failed to do.

It is not contended that the child made both statements. From plaintiff's point of view, we have to accept as true one or the other version. This dilemma is solved by applying the rule expressed in *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652, as follows: "As a general rule when two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favor-

able to him. In such a situation he would be entitled to have the jury instructed upon his contention, or if there were a demurrer to the evidence, the facts would have to be regarded as established in accordance with the testimony most favorable to him. This is not true, however, as to the testimony which he gives himself. No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified."

The purpose of permitting the introduction of this class of evidence, which is an exception to the hearsay rule, is to prove facts and not opinions. The *res gestae* is not the witness speaking but the transaction voicing itself. The spontaneity of the utterance is the guaranty of its trustworthiness in substitution of that provided by oath and cross-examination.

In *Beck* v. *Dye*, 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022, the Washington court, after reviewing the authorities, said:

" * * * the statement or declaration concerning which testimony is offered must, in order to make such evidence admissible, possess at least the following essential elements: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and

(6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

The version of the child's statement, as given by plaintiff, does not conform to (3), quoted above; that is, it is not "a statement of fact" but is a "mere expression of an opinion" of an immature, irresponsible child. The child's reference to her father shows that her mind had been projected beyond the immediate moment of the accident to the reaction of her father when he had been informed of the event. The expression, "If I hadn't told Mother to look down at my foot, it would not have happened," has no probative value and is not pertinent. The admission of such evidence in a border-line case constitutes reversible error.

This conclusion does not conflict with the holding in *Ellis* v. *Virginia Ry., etc., Co.,* 132 Va. 24, 110 S. E. 382, and *Washington-Virginia Ry. Co.* v. *Deahl,* 126 Va. 141, 100 S. E. 840, as in each of these cases the question was not whether the statement sought to be admitted under the rule of *res gestae* was a statement of fact, but whether the expression of facts in the two respective cases were sufficiently close in time to the happening of the main event to be construed as spontaneous expressions illustrative of the principal event and a part of the litigated act.

The trial court, over the objection of defendant, granted plaintiff's instruction P-1, as follows: "The court instructs the jury that if they believe from a preponderance of the evidence that the defendant failed to keep a proper lookout, and if this was gross negligence under all the circumstances then existing and that such gross negligence was the cause of the accident, then they should find a verdict for the plaintiff."

The giving of this instruction constitutes reversible error. It directs a verdict but fails to state to the jury that the gross negligence of defendant, if established, must be the proximate cause of the injuries sustained. Plaintiff, in no

other instruction, attempted to define the difference between ordinary and gross negligence.

The court refused to grant instruction 5-D, requested by defendant. This instruction reads as follows: "The court instructs the jury that under the evidence in this case the plaintiff, Mrs. White, was riding as a guest in the automobile driven by the defendant, Mrs. Chappell. Unless you find from a preponderance of the evidence that the injuries sustained by the plaintiff were caused directly and proximately by the grossly negligent operation of the automobile by the defendant, the plaintiff cannot recover and your verdict must be for the defendant."

While instruction 4-D, given by the court on the request of defendant, defines gross negligence, it does not cover the phase of the case embraced in instruction 5-D, which should have been given.

The judgment of the trial court is reversed and the case remanded.

*Reversed and remanded.*