# Richmond

BETSY D. McDOWELL, BY J. SEGAR GRAVATT, GUARDIAN AD LITEM
v. MOLLIE J. DYE.

March 10, 1952.

Record No. 3899.

Present, All the Justices.

The opinion states the case.

*J. Segar Gravatt,* for the plaintiff in error.

*A. S. Harrison, Jr.,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Mollie J. Dye recovered a verdict for $10,000 against Betsy D. McDowell in the Circuit Court of Brunswick county, in a suit growing out of an automobile accident in which Mrs. Dye was injured while riding as a guest in a car driven by Mrs. McDowell. Mrs. McDowell was the married daughter of Mrs. Dye and at the time of the accident was approximately twenty years of age. Upon petition of Mrs. McDowell, by her guardian *ad litem,* a writ of error and *supersedeas* were awarded to the judgment.

Several errors are relied upon which will be treated in the order assigned.

The immediate question for determination is whether the transcript of the testimony and other incidents of the trial was tendered to the judge within sixty days from the time at which the judgment was entered. (Rule 5:1, § 3(e); Code, 1950, § 8-338)

The parties will be referred to as plaintiff and defendant, the position occupied by them in the trial court.

The trial consumed two days, July 6 and 7, 1950. The verdict of the jury was received by the court on July 7, and the order of that day shows that the defendant immediately moved to set aside the verdict, assigning reasons therefor. The motion was taken under advisement and continued for argument which was heard on October 26, 1950, at which time the court overruled the motion and pronounced judgment upon the verdict. No order was entered on this day, a controversy having arisen between counsel as to the contents of the order to be entered carrying into effect the court's oral pronouncement.

A draft of an order was submitted to the court by counsel for each party on November 4, 1950. Thereupon the court drew its own order, resolving the differences between the parties,

antedated the same October 26, 1950, endorsed it and mailed the original to the clerk and copies to counsel.

On December 22, 1950, the transcript, endorsed by counsel, was forwarded to the court at Prince George, Virginia; on December 26, 1950, it was received by the court and marked tendered, and on the same day the court signed the certificate and mailed the transcript to the clerk at Lawrenceville.

. Counsel for plaintiff later filed a written motion requesting the court to expunge its signature from the certificate claiming that it had been tendered and signed more than sixty days after the time at which the judgment was entered and therefore was too late.

Defendant filed a reply to this motion and filed a separate motion requesting the court to correct the record to show that the order dated October 26, 1950, was not entered on that date but had been endorsed for entry on November 4. Filed in support of the motion was a letter from the trial judge, directed to counsel, dated November 4. The letter refers to the order endorsed for entry on November 4 as the final order in the case.

After hearing argument on the motions on January 2, 1951, the court overruled defendant's motion to correct the record, and sustained plaintiff's motion to expunge the court's signature, to which rulings exceptions were taken.

Simply stated, the question for decision is: Was final judgment entered in this case on October 26 or on November 4, 1950?

On October 26 argument was heard on the motion to set aside the verdict. At this time the court, by oral pronouncement, overruled the motion. This ruling could not be held to be an entry of judgment. Courts of record are required to maintain order books for the purpose of recording systematically the daily proceedings had in court. Orders should be entered by the clerk chronologically.

In this instance the court, without notifying counsel, directed the clerk to reserve a blank space under the date October 26, 1950, for the entry of the final order when approved. The order endorsed for entry by the court on November 4 was copied in this space, therefore the record did not conform to the facts. The order endorsed by the judge should have been spread upon the order book in proper sequence, under date November 4, 1950.

Section 17-27, Code of Virginia, provides: "The proceedings

of every court shall be entered in a book kept for the purpose to be known as the order book. The proceedings of each day shall be drawn up at large and read in open court, by the clerk thereof, at the next session of the court, except those on the last day of a term, which shall be drawn up and read the same day. * * * "

Had this statute been complied with and the proceedings for October 26, 1950, read in open court, there would have been no order respecting the disposition of this case, for, admittedly, the order was endorsed for entry on November 4 and therefore it could not have been spread upon the order book before that time.

Section 8-338, Virginia Code, contains the time limitation within which the transcript must be tendered and signed by the court. It reads: "Any certificate pursuant to section 8-331 or section 8-332 may be tendered to the trial judge at any time before final judgment is entered, or within sixty days from the time at which such judgment is entered * * * ".

Section 8-330 dealing with the preparation of a record for appeal by means of bills of exception employs the same language as section 8-338, "within sixty days from the time at which such judgment is entered."

There is a distinction between the *rendition* of a judgment and the *entry* of a judgment. The judgment in the instant case was *rendered* on October 26, 1950, but it was not *entered* until November 4, and hence the time runs from the latter date. Vol. 3, Am. Jur., Appeal and Error, § 430, page 147; 4 C.J.S., Appeal and Error, § 445, page 911.

On October 26 the exact order to be entered had not been formulated in the mind of either the court or counsel. Something remained to be done, differences had to be settled. It was contemplated that counsel would submit drafts of an order to the judge for his approval and when they did so on November 4 the court prepared its own order and endorsed it for entry.

It is suggested that if we hold the date of November 4 to be the determining date we will in effect overrule the case of *Daley* v. *Commonwealth,* 132 Va. 621, 111 S. E. 111. We do not so interpret our holding. The same argument was advanced in the case of *Spicer* v. *Spicer,* 192 Va. 105, 63 S. E. (2d) 773. There, Mr. Chief Justice Hudgins, in distinguishing the cases, said:

"In the *Daley Case* the court not only pronounced judgment

on the verdict, it sentenced the defendant, suspended the sentence in order to give him time to prepare his petition for a writ of error, and admitted him to bail. In other words, the trial court did everything necessary to be done in order to make the judgment final. Nothing was left to be done except the ministerial act of the clerk of spreading the different orders of the court upon the order book. It was contemplated that the clerk should write the orders, and in due course, make a permanent record of them.

"In the case now under consideration it does not appear that the clerk * * * was expected to write the orders for entry upon the permanent records. In the order signed by the judge * * * it is stated: ' * * * the court, having advised counsel for both plaintiff and defendants it was then ready to render a decision in the matter, proceeded to hold that the verdict of the jury should be sustained * * * .'

"This is not a judgment. It is notice to counsel of the decision of the judge so that they might prepare the proper order making the decision effective. * * * The pronouncement of judgment is one thing, the entry of the judgment is another. * * * *" Our holding in the *Spicer Case* is equally appropriate here.

"An order may not be entered *nunc pro tunc* if the rights of any party will thereby be affected adversely. * * * We decline to give a retrospective effect to this judgment order which would result in cutting off the plaintiff's time for applying for a writ of error." *Baker* v. *Gaskins*, 125 W. Va. 326, 24 S. E. (2d) 277, 278; 11 M. J., Judgments and Decrees, § 41, pp. 70-71.

The final order in this case should have been spread upon the order book, in proper sequence, under date November 4, 1950, which is "the time at which such judgment is entered". (Code, § 8-338).

Defendant's next assignment of error deals with the court's failure to strike the evidence and its refusal to set aside the verdict and enter final judgment for the defendant, because it is said, (1) the evidence does not show any act or acts constituting gross negligence on the part of the defendant; (2) the plaintiff failed to show any gross negligence which was the proximate cause of the injury, and (3) the evidence shows that the plaintiff was guilty of contributory negligence and assumed the risk of the negligent acts relied upon.

Here we have the verdict of a jury, approved by the trial judge, which brings the case to us practically as upon a demurrer to the evidence. Section 8-491, Virginia Code. In this situation plaintiff's evidence and all fair inferences which may be drawn therefrom must be accepted as true and evidence in conflict therewith is waived. *Woodmen of the World Life Ins. Soc.* v. *Grant,* 185 Va. 288, 297, 38 S. E. (2d) 450; *Bristow* v. *Brauer,* 175 Va. 118, 7 S. E. (2d) 93.

The facts and circumstances surrounding the accident are briefly as follows: On October 11, 1949, defendant secured her husband's permission to use his car for the purpose of taking her mother to Lawrenceville, where Mrs. Dye had a dental appointment for her children, and while in town the defendant was to do some shopping.

The trip to Lawrenceville was uneventful. The car used on the occasion was a 1947 model Ford sedan. In addition to the plaintiff and defendant there were five other occupants of the car, including defendant's two-year-old baby, and four young girls who occupied the rear seat. Plaintiff and defendant occupied the front seat, the defendant driving the car and the plaintiff holding the baby.

Before leaving Lawrenceville the party secured refreshments. Plaintiff and defendant had coca-colas in paper cups and the children ice cream. Upon entering the car to go home defendant handed her coca-cola to one of the girls in the rear seat to hold for her. While en route out of town, traveling west on Windsor avenue (State Highway No. 46) the car was wrecked by crashing into a light pole. The force of the impact was so severe that the front end of the car was demolished, and the plaintiff suffered serious and permanent injuries as a result.

The evidence shows that the accident occurred in a zone where the speed was restricted to 15 miles per hour. Defendant was in this 15-mile zone when she lost control of the car and it crashed into the pole.

In driving west out of town it was necessary for Mrs. McDowell to turn a sharp curve to her right. The evidence shows that as she approached the curve she was driving so fast in this restricted zone that plaintiff protested the speed. Plaintiff's account of the accident follows: "As we started out of town I seemed to think she was driving too fast. I says, 'slow down, Betsy.' She said, 'Oh, I'm not driving fast.' And so she

turned around and asked my other daughter to give her the coca-cola and I said, 'please wait until you get out of town to drink it.' She said, 'I know I can drive and drink it, too.' And so the car began to sway back and forth. I asked her what was the matter with her. She says, 'I can't turn the wheel.' She had got too close on to the post, she couldn't turn it.''

Mrs. Dye said the defendant turned her body to the left to get the coca-cola and that her head and eyes were turned far enough to the rear for her to see the cup as it was handed to her. The plaintiff was corroborated in her testimony by two of the girls in the back seat. Witness Ruby Mae Dye testified that Mrs. McDowell's explanation of what happened after she reached for the coca-cola was: ''She said she couldn't control the car. She said that the car got loose from her.'' This witness further testified:

''Q. You say the car started waving back and forth across the road. When did that happen?

''A. When she started to take the drink.

''Q. What happened to the drink?

''A. We both dropped it.

''Q. Did you both have your hands on it at one time?

''A. I think she had hold of it. I am not sure.

''Q. Any way, the coca-cola was right there?

''A. Yes.

''Q. She was reaching for it and you were handing it across?

''A. Yes.

''Q. Did very much time elapse between the time she asked for the coca-cola and the wreck?

''A. No, sir.

\* \* \* \* \*

''Q. You said that her mother told her to wait until she got out of town before she started getting the drink?

''A. Yes.'' '

The estimated speed at the time of accident varies from 25 to 35 miles per hour. The physical facts show that the right wheels of the car struck the curbing of the sidewalk and scraped along it for a distance of 39 feet, leaving black tire marks on the curb. At this point the right wheels of the car left the street and the car continued with the two left wheels on the street and the two right wheels between the sidewalk and the curb for a distance of 30 additional feet when it crashed into the pole.

From this evidence and the fact that the front of the car was demolished the jury had a right to conclude that the witnesses had underestimated the speed. *Davis* v. *Webb,* 189 Va. 80, 85, 52 S. E. (2d) 141.

Each witness testifying as to how the defendant reached for the cup of coca-cola gave a demonstration of the act. They testified that she turned her body, took her hand from the steering wheel and turned her head and eyes sufficiently to see the coca-cola.

The trial judge and the jury witnessed these demonstrations, they saw the witnesses while testifying and were in a position to evaluate the evidence adduced before them. In such instances they have the advantage over an appellate court.

Whether the conduct of a person operating an automobile amounts to gross negligence within the meaning of Code, § 8-646.1 depends upon the facts and circumstances surrounding the operation. The element of time incident to the accident must be considered with the surrounding circumstances in determining whether the driver's conduct constitutes gross negligence. One degree of care sufficient under certain circumstances may amount to gross negligence under others. If reasonable men may differ upon the question then a jury problem is presented. *Mitchell* v. *Wilkerson, ante,* pp. 121, 127, 67 S. E. (2d) 912; *Watson* v. *Coles,* 170 Va. 141, 145, 195 S. E. 506; 60 C. J. S., Motor Vehicles, § 258(c), page 633, and § 399(4), page 998.

Clearly the facts in the instant case presented a question for the jury under proper instructions. Probably the question of the existence of gross negligence would not be seriously challenged if it were not for the relationship existing between the parties. Here the law makes no distinction. The defendant was emancipated, she had been married three years, had a family of her own and was no longer a member of plaintiff's family.

In guest cases we have often discussed the degree of negligence as applied to the facts of the individual case. It would serve no good purpose here to catalogue these decisions. Many of them are treated by Mr. Chief Justice Hudgins in *Chappell* v. *White,* 182 Va. 625, 29 S. E. (2d) 858.

We held in *Young* v. *Dyer,* 161 Va. 434, 440, 170 S. E. 737:

"A mere failure to skillfully operate an automobile under all conditions, or to be alert and observant, and to act intelli-

gently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinarily prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable negligence for which defendant would be responsible to an invited guest.''

The evidence in the instant case goes far beyond the facts in the *Young Case*. Here the car was being operated at an unlawful speed in a restricted zone. The plaintiff warned the defendant of the excessive speed before the crash. Plaintiff protested the drinking of the coca-cola in the town and suggested that defendant get out of town into the open country before she attempted to drink it. All warnings and suggestions were ignored. Defendant, without slackening her speed, turned in her seat, reached for the coca-cola with one hand off the steering wheel and her eyes focused upon the coca-cola instead of the road. In this situation her attention was diverted from the business of driving and an obvious risk was incurred.

In *Chappell* v. *White, supra,* we approved the holding in *Koufman* v. *Feinberg*, 298 Mass. 270, 10 N. E. (2d) 91. There it was held that one of the more common *indicia* of gross negligence is deliberate inattention to the operation of an automobile, and that such inattention is evidence of want of even scant care. In the *Koufman Case,* over plaintiff's protest, defendant removed a suitcase from the floor in the front of the automobile and put it in the back while traveling between 35 and 40 miles per hour. The car ran off the road and struck a tree, injuring plaintiff. Using the above reasoning, the court held the defendant guilty of gross negligence.

There are many cases which hold that deliberate inattention to the operation of an automobile constitutes important evidence of gross negligence. *Rog* v. *Eltis,* 269 Mass. 466, 169 N. E. 413; *Blood* v. *Adams,* 269 Mass. 480, 169 N. E. 412; *Smith* v. *Axtman,* 296 Mass. 512, 6 N. E. (2d) 809. These cases distinguish the holding that a momentary turning of the eyes from the road is not of itself gross negligence. *Woods* v. *Woods,* 295 Mass. 238, 3 N. E. (2d) 837.

In the instant case it was a jury question as to whether or not the defendant was guilty of gross negligence under the facts and circumstances proven.

Defendant next contends that plaintiff assumed the risk and was guilty of contributory negligence. These defenses become closely related in cases of this kind. Suffice it to say that the record fails to show that the plaintiff assumed any risk in this instance or that she was guilty of contributory negligence. She was a guest in the car which was being driven by defendant who held a State operator's license. The argument that she had only driven for several months is no indication that she was not capable of properly driving the car. The record discloses that just prior to the accident defendant was warned by plaintiff not to drive so fast, and she was also warned in no uncertain terms about drinking the coca-cola before getting out of town. All warnings went unheeded and the accident resulted. Here there is no indication of assumed risk, neither is there proof of contributory negligence.

The final assignment asks that the case be reversed and remanded on the ground that the jury was improperly instructed. We have considered the instructions given and feel that they fully and fairly state the law governing the facts of the case. Instructions refused dealt with assumption of risk and contributory negligence. They were properly refused as the record contains no evidence upon which to base instructions dealing with these defenses.

For the reasons stated the judgment is

*Affirmed.*