## Richmond

ACIL G. HUMPHREYS v. DAISY VESTA BAIRD.

January 16, 1956.

Record No. 4437.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*T. W. Messick* and *Thurman Britts*, for the plaintiff in error.

*Dodson, Pence & Coulter*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

Daisy Vesta Baird instituted an action at law against Acil G. Humphreys to recover money obtained by him from her through false representations, fraud and deceit. She also sought recovery of other damages, *i.e.*, loss of income and damages for humiliation and mental anguish occasioned by his fraud and deceit, all in the aggregate sum of $15,000.

The gravamen of her claim is that by false protestations of affection for her and by false and deceitful promises and statements, Humphreys obtained the sum of $3,221 from her, induced her to leave her employment and enter into marriage with him when he was married to another woman, and thereby caused her additional damage.

Humphreys denied that he had perpetrated any fraud upon her, asserted that she voluntarily entered into the marriage ceremony and lived with him when she knew that he was undivorced and that their marriage was invalid.

A verdict for $12,500 was returned in plaintiff's favor, and from the judgment confirming that award, we granted a writ of error.

Defendant does not now challenge plaintiff's right to recover the sum of $3,221 that he obtained from her. The errors asserted by him are that (a) the court erred when it declined to strike the evidence as to all damages in excess of $3,221; (b) the verdict conflicts with defendant's instruction A, and should have been set aside; and (c) the court erred when it refused instruction D tendered by defendant.

These assignments require that the pertinent evidence be stated.

Plaintiff obtained employment in the city of Roanoke, Virginia, at the age of sixteen. In 1934 she married James W. Baird, and a girl child was born to them. She was divorced from Baird in 1950 and was working in Roanoke and living in nearby Botetourt county with her mother and five year old child when, at the age of forty-two, she met defendant in the fall of 1951. He was then living with his sister and brother-in-law, Lewis Vaden, who resided next door to where plaintiff worked. Before accepting defendant's attentions, plaintiff inquired of Vaden as to whether Humphreys was married or not. His reply was that Humphreys had been married but was not then married.

Defendant was engaged in the hauling business and operated a small fleet of trucks wherever he could obtain hauling contracts. When he met plaintiff, he was forty-five years of age, had been

thrice married and twice divorced, and was then separated from his third wife. It does not appear that plaintiff was apprised of the fact that he had been married more than once when she accepted his attentions and later married him.

Throughout the latter months of 1951 and during 1952, defendant paid court to plaintiff, and they appeared to be a devoted couple. He visited her regularly, was kind and generous to her child and considerate of her mother. His courtship continued throughout the spring of 1952, and he won plaintiff's confidence and affection. They contemplated marriage at an early date.

Subsequent to plaintiff's inquiry about defendant's marital status, but before she agreed to marry him, she learned that he was undivorced but had been separated from his wife since February, 1951. During the courtship he informed her that he would soon obtain his divorce, and early in May, 1952, he told her, "I have got good news * * * My divorce is final and we can get married this month." She remembered that when she was divorced, her lawyer informed her that another marriage could not be entered into for a period of several months—six months as she recalled. She apprised defendant of what she had been told. He dispelled her doubts and reassured her by saying, "Well, there is a job in Maryland I am going on, we will get married in Maryland and it won't matter about the time because the divorce is final any way." She said that she believed him and relied upon his statements and would not have married him had she known that the marriage would not be valid.

The time fixed upon for the wedding having almost arrived, defendant bought her a wedding band, and she purchased her trousseau and arranged to have someone keep her child for a few days. On May 20, 1952, they left Roanoke in his car, and plaintiff thought that they were then going to Maryland to be married, but defendant drove to Norfolk, Virginia. At that time his trucks were being used on a hauling contract in Norfolk, and he told her that his presence was required there for business reasons. Upon arrival in Norfolk, he rented a trailer which he contemplated buying, and the two lived together in the trailer as man and wife for about eight days. On May 28 he drove plaintiff to Frederick, Maryland, and after signing a statement under oath that he was divorced, a marriage license was issued. Later that day the couple went through a marriage ceremony in New Market, Maryland. They returned to Roanoke where her child joined them, and the three went to Norfolk where they re-

mained until July 5. Upon leaving Norfolk, they went to Botetourt county where plaintiff, defendant and her child lived in a cabin that she owned until defendant obtained other hauling contracts in the spring of 1953.

During the time the couple lived in Botetourt county, defendant left home on numerous occasions and remained away during many week-ends and failed to provide plaintiff with housekeeping money. She was forced to seek employment, and after he had been absent for several weeks during the summer of 1953 and she had heard rumors concerning the invalidity of their marriage, she undertook to investigate his marital status. She consulted an attorney who, upon examination of the court records, ascertained that defendant had filed a divorce suit on May 7, 1952, against his then wife, Maude O'Connor Reynolds Humphreys, and that an order of publication had been entered but no decree of divorce had been granted as of August, 1953. It was then also ascertained that defendant had been married and divorced from two other wives prior to his marriage to Maude O'Connor Reynolds, and that he had since that marriage, been living with still another woman during part of 1953. Upon obtaining this information plaintiff instituted her action at law against defendant.

From the above facts, it is made plain that at the time defendant courted and won plaintiff's confidence and affection, told her that his divorce was final, persuaded her to accompany him to Norfolk and live with him under the assurance that they would be married in Maryland, he well knew that he was undivorced and that the contemplated marriage with plaintiff would be wholly void.

The evidence further shows that on April 11, 1952, after he and plaintiff contemplated marriage, he persuaded her to place a deed of trust for $4,500 upon a modest residence that she owned in Roanoke and was renting to a tenant. This was accomplished by telling her that he needed money to buy licenses and insurance for his trucks, equipment for his hauling business and to pay his employees. Having induced her to encumber her property, he then obtained $3,221 from plaintiff by promising to repay her and persuading her to draw checks to him between April 11, 1952, and June 19, 1952, in amounts totaling that sum.

Defendant now admits that he is obligated to repay the $3,221 that he so obtained but contends that the statements he made about the divorce decree were representations of law and not of fact, and though false, they are not actionable.

When defendant asserts that his statements about the divorce were not factual but only legal conclusions, he loses sight of the fact that when the statements were made, he had obtained no divorce of any character.

By his representations he sought to have plaintiff understand that he was, in fact, divorced and that they could then be married, and to that extent they were clearly factual. He occupied a position of trust and confidence in his relation with his fiancee, and she was entitled to rely upon his statements concerning his marital status. His assertion that his divorce was final and that they could get married in Maryland was more a statement of fact than of law, and the evidence does not conclusively show that plaintiff knew that his status was such as to preclude him from contracting a valid marriage. Even if his statements about his divorce are somewhat mixed statements of law and fact, they were concededly false and he intended them to convey the meaning that his divorce was of such character as to allow him then to be legally married.

The effect of any decree of divorce that he might have had (though at that time he had obtained none), would be a legal matter. However, under the relations of trust existing between plaintiff and defendant, his false statement that he had obtained a final decree of divorce was clearly material and sufficient to impose liability if relied upon by plaintiff to her damage, as it is shown to have been. 37 C. J. S., Fraud, § 55, p. 323; 23 Am. Jur., Fraud and Deceit, § 48, p. 812.

"The defendant occupied a relation of trust and confidence toward the plaintiff because of their engagement to marry and was bound to act fairly and in good faith in his dealings with her. * * * When a party occupies such a relation his misrepresentations of law may be actionable. The party with whom, because of that relation, he had the duty to deal fairly, would have a right to rely and act upon such representations if believed without negligence. * * * Misstatements of law may also be a ground of liability, if a party possessed of superior knowledge takes advantage of the ignorance of the other to deceive him by such misstatements * * *." *Jekshewitz* v. *Groswald*, 265 Mass. 413, 416, 164 N. E. 609, 62 A. L. R. 525.

Defendant says further that the evidence conclusively shows that plaintiff knew of his marital status and knew that he was unable to enter into a valid marriage when she lived with him and when the ceremony was performed.

Plaintiff has obtained a jury's verdict which has been approved by

the trial court. All conflicts in the evidence have been decided against defendant, and plaintiff is entitled to have the evidence reviewed with all reasonable inferences deducible therefrom resolved in her favor.

The judgment confirming the verdict may not be disturbed "Unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Section 8-491, Code of 1950. *McDowell* v. *Dye*, 193 Va. 390, 69 S. E. (2d) 459; Burks: *Pleading and Practice*, 4th ed., § 325, p. 621.

When tested by these principles, the evidence does not conclusively prove that plaintiff was aware of the fact that defendant could not enter into a valid marriage, and it is ample to sustain the verdict and judgment.

Defendant asserts that the verdict of the jury is in conflict with instruction A, and for that reason the verdict and judgment cannot stand.

## "INSTRUCTION A.

"The Court tells the jury that the law of Virginia does not permit divorced persons to marry another within or without this State within four months of the entry of the final decree of divorce, and in this case both parties hereto are charged with the knowledge of the law as well as other laws of the land.

"Therefore, if you believe that the plaintiff in this case knew the marriage status of the defendant on the 11th day of April, 1952, the date that she procured a loan on her property, she cannot recover in this case; and the Court further instructs you that if you believe from the evidence that the plaintiff learned of the married status of the defendant prior to the purported marriage ceremony in May, 1952, she is not entitled to recover any damages claimed to have been sustained by her after she learned of this status, nor can she recover in this case any damages based solely upon any unlawful cohabitation in this case prior to the purported marriage ceremony in May, 1952."

He contends that the evidence conclusively proves that plaintiff learned of his marital status prior to the purported marriage ceremony in May, 1952, and therefore she was not misled by him.

What we have already said about the sufficiency of the evidence is pertinent here. When the positions of the parties are considered and the evidence fairly weighed, it does not conclusively show that prior to May 28, 1952, plaintiff was aware of defendant's marriage status. Thus the verdict is not in conflict with instruction A.

However, it should be observed that the first paragraph of the instruction is erroneous for it is all-inclusive and unequivocally states that divorced persons may not marry again within four months.

The time restriction imposed upon remarriage by § 20-118, Code of 1950, does not apply to all absolute divorces granted in Virginia. It is only applicable to decrees of divorce granted on grounds arising subsequent to the marriage. But instruction A was given at defendant's instance, and the error in the first paragraph being in his favor, he cannot complain.

Instruction D refused defendant is subject to the same objection as is the first paragraph of instruction A. It unqualifiedly states that if defendant was divorced during the month of May, 1952, he could not thereafter enter into a legal marriage "for a period of four months." The prohibitory language of § 20-118 applies solely to divorces awarded "for any cause arising subsequent to the date of the marriage. * * *" Section 20-91, Code of 1950, enumerates the grounds for which absolute divorces may be granted and some are for causes existing prior to the marriage, as well as arising thereafter.

An additional objection to the instruction is that it assumes that defendant had obtained a decree of divorce of some character in May, 1952, while the record conclusively shows that he had not.

We find no reversible error in the record, and the judgment is affirmed.

*Affirmed.*