## Richmond

WILLIAM LEE WILSHER, AN INFANT V.
ACY LEWIS ADAMS, ADM'R, ETC.

December 4, 1967.

Record No. 6488.

Present, Eggleston, C.J., and Buchanan, Snead, I'Anson and Gordon, JJ.

*William Rosenberger, Jr.* for plaintiff in error.

*Royston Jester, III; Earl M. Brown* for defendant in error.

EGGLESTON, C.J., delivered the opinion of the court.

Acy Lewis Adams, administrator of the estate of James Corbin Adams, deceased, has recovered a verdict and judgment of $22,500 against William Lee Wilsher for the alleged wrongful death of plaintiff's decedent who was riding as a guest passenger in a car driven by the defendant. The defendant has appealed, claiming that the evidence was insufficient to support the finding that he was guilty of gross negligence in the operation of the car, necessary under Code § 8-646.1 [Repl. Vol. 1957] to sustain a recovery.

The material facts are not in conflict. On Sunday, June 14, 1964, about 6:00 P. M., James Corbin Adams, age 15, his twin brother, Clyde L. Adams, and two teen-age girls were passengers in a car

which was being driven westwardly along Rivermont Avenue in the city of Lynchburg by William Lee Wilsher, age 18. At the apex of a left-hand curve the car ran off the pavement on the right-hand side, passed over a low curb, across a grass plot 5 feet 7 inches wide, and struck a telephone pole. The car was demolished and the pole shattered by the impact. James Adams, who was riding on the right-hand side of the rear seat, was killed. Wilsher, the driver, and the other occupants of the car were injured.

At the scene of the collision Rivermont Avenue is 53 feet 6 inches wide, paved, and divided into two lanes for east- and westbound traffic, respectively. For westbound traffic the street curves sharply to the left at the point where the car ran off the roadway.

About 5:00 P. M. on the afternoon of the accident, Wilsher, the driver of the car, picked up the Adams brothers at a drugstore in the western outskirts of the city of Lynchburg. The three boys drove downtown and picked up Anne C. Helms and Linda C. McCarthy, both age 15, at a drugstore near a theater which the girls had just attended. Anne Helms took a seat next to Wilsher, the driver, while Clyde Adams was seated on the outside front seat. Linda McCarthy was seated in the rear behind the driver, while James Adams occupied the right-hand rear seat. The car was driven westwardly along Main Street to Rivermont Avenue, thence westwardly along Rivermont Avenue to the place where the accident occurred.

The evidence is undisputed that during the entire trip the car overtook and passed no other vehicles and was driven within the varying permitted speed limits. At the time and place of the accident it was being driven at approximately 35 miles per hour which was within the proper speed limit. Wilsher and the other occupants of the car so testified and this was corroborated by the drivers of two cars, one of which was preceding the Wilsher car and the other following it just before the accident.

As the car was passing the First Christian Church, which is located on the south side of Rivermont Avenue, the girls were discussing the movie which they had just seen. One of the boys remarked that Anne Helms "should wear her hair like the girl in the movies." Thereupon the occupants laughed and those on the front seat, including Wilsher the driver, turned and looked toward the rear seat. When Wilsher turned his head and looked over his right shoulder the car continued straight ahead at the same speed until it reached the curve in the street where it ran off the pavement on the right-hand side and struck the utility pole.

Robert F. Duncan testified that he was driving about 200 feet ahead of the Wilsher car; that he "glanced in the rear view mirror" and observed the car; that "all at once it swerved like that and hit the pole," and that before the impact the car "was coming about the same speed it was traveling on, didn't seem to speed up or anything."

The evidence is not precise as to just where the car was at the time the remark was made which prompted the driver and other occupants of the front seat to look toward the rear. Clyde Adams testified that at the time the remark was made the car was "in the vicinity" of the church. Linda McCarthy testified that the remark was made when the car was "passing the church," or about "forty or fifty feet from the pole" with which it collided. Anne Helms said she could not remember just where the car then was. Wilsher, the defendant driver, sustained a concussion of the brain from the impact and was unable to recall just what had occurred and why the car had left the roadway.

The church building fronts 68 feet along the street and its nearest corner is 32 feet west of the pole.

In its written opinion the trial court held that the evidence was sufficient to warrant the jury in finding that Wilsher was guilty of "deliberate inattention" in the operation of the car "as distinguished from momentary inattention," and that this amounted to gross negligence. It based that conclusion on *Chappell* v. *White*, 182 Va. 625, 29 S.E.2d 858 (1944), and *McDowell* v. *Dye*, 193 Va. 390, 69 S. E. 2d 459 (1952).

In the *Chappell* case the evidence was that the driver deliberately took her eyes from the road to examine the shoe of her small daughter seated by her and that while she was doing so the car ran 75 to 90 feet diagonally across the left shoulder of the highway, turned over, and came to rest in a ditch six or more feet from the hard surface. We held that the evidence was sufficient to sustain a finding that the driver was guilty of deliberate inattention which constituted gross negligence.

In the *McDowell* case the driver, proceeding 25 to 35 miles per hour in a 15-mile zone around a sharp turn, over the protest of the plaintiff passenger, turned around in her seat, took her eyes off the road, and attempted to accept a soft drink from a passenger in the rear seat of the car. In doing so she lost control of the car which crashed into a utility pole, injuring the plaintiff guest. We held that this, too, warranted the jury in finding that the driver was guilty of deliberate inattention which constituted gross negligence.

We think the evidence in the present case shows no more than momentary inattention and lack of ordinary care and falls short of wanton and reckless conduct necessary to constitute culpable gross negligence.

The witnesses agree that just before the accident the car was proceeding at about 35 miles per hour or about 51.3 feet per second. Code § 46.1-195 [Repl. Vol. 1958], "Tables of speed and stopping distances." Thus, in two seconds it traveled 102.6 feet, or more than the width of the church building (68 feet) plus 32 feet the distance from the corner of the building to the pole. Whether we accept as true the testimony of Clyde Adams that the remark which prompted Wilsher to look over his shoulder was made when the car was "in the vicinity" of the church, or that of Linda McCarthy that it was then about 40 or 50 feet from the pole, it is plain that the accident happened suddenly and that the driver's inattention was momentary and lasted approximately two seconds. In *McDaniel* v. *Wern*, 206 Va. 819, 147 S. E. 2d 158 (1966), we held that momentary inattention of a driver for a period of two seconds did not constitute gross negligence. For similar holdings see, *Finney* v. *Finney*, 203 Va. 530, 125 S. E. 2d 191 (1962); *Laughorn* v. *Eanes*, 207 Va. 584, 151 S. E. 2d 378 (1966).

The judgment is reversed, the verdict set aside, and a final judgment will be here entered in favor of the defendant, William Lee Wilsher.

*Reversed and final judgment.*