# Richmond

## JOHNNY ROBERT TERRY, AN INFANT v. CAROLYN F. FAGAN, AN INFANT, ETC.

March 10, 1969.

Record No. 6846.

Present, All the Justices.

*Francis W. Flannagan* (*Woodward, Miles, Davis & Flannagan*, on brief), for plaintiff in error.

*George M. Warren, Jr.; J. D. Bowie* (*Warren & Bowie*, on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

This action was instituted by Carolyn F. Fagan, an infant, suing by her next friend, against Johnny Robert Terry, an infant, to recover damages for personal injuries sustained while plaintiff was riding as a guest passenger in the defendant's automobile. The motion for judgment alleged that defendant was guilty of gross negligence in the operation of the car which proximately caused the accident and plaintiff's injuries.

A jury trial resulted in a verdict of $15,000 in favor of the plaintiff. Judgment was entered on the verdict and defendant is here on a writ of error.

The defendant contends that the evidence was insufficient to support the finding of gross negligence; that the plaintiff was guilty of contributory negligence or assumption of risk; and that the trial court erred in granting and refusing certain instructions.

Under settled principles, the evidence will be stated in the light most favorable to the plaintiff.

On the night of April 3, 1965, the defendant, who was 17 years of age, had a date with the plaintiff, 16 years of age, to take her to a party. He picked her up at her home in Bristol, Virginia, between 8 and 8:30 p.m., and after stopping at several places in the city they proceeded on their way to the party in Washington county.

While proceeding east on route 76, King Mill Pike, at a point in the county approximately 412 feet beyond the city limits sign of the city of Bristol, the car, with defendant at the wheel, left the road and crashed into a tree. The highway was blacktop, 18 feet 6 inches wide, and the speed limit was 35 miles an hour. The night was dark, the road dry, and the weather clear. There was no other traffic along the highway at the time.

The accident occurred around 8:45 p.m., and a State trooper arrived on the scene before the plaintiff and defendant had been removed from the car and taken to the hospital. He did not talk with either party that night. His investigation showed that there were no skid marks on the highway leading up to the point of impact, but he noticed tire marks indicating that the car had traveled along the left-hand shoulder of the road, entirely off the pavement, for a distance of 24 feet, before striking a tree standing three feet from the left edge of the highway. He identified photographs showing the highway leading up to the point of impact and the front of the demolished car up against the tree. A short distance beyond the city limits of Bristol the road makes a slight curve to the right and then it is straight and level for a distance of 300 to 350 feet to the point of impact. He also testified that the distance from a highway sign which read "East 76 to Route 11 3" to the point of impact was 248 feet by actual measurement.

The plaintiff testified that shortly after defendant's automobile turned onto King Mill Pike she reached over and rolled up the right front window of the car. When she turned back around she saw defendant looking down at his lap and brushing the front of his shirt with both hands. He told her that he had knocked hot ashes off of his cigarette onto his shirt and into his lap. She "half screamed" at the defendant that he was crazy and to put his hands back on the steering wheel. The defendant disregarded her plea and continued brushing the front of his shirt with both hands, with his eyes focused downward. She then looked ahead and the car was coming out of the curve into a straight stretch, traveling in the center of the road, at a speed of approximately 25 miles an hour. In a brief moment thereafter, she glanced at the sign on the right-hand side of the road reading "East 76 to Route 11 3" (which the police officer testified was 248 feet from the tree the car crashed into). She looked at the defendant again and he was still looking down and brushing his shirt and jacket with both hands, leaving the steering wheel unattended. She became panic stricken, and the next thing she remembered was when the defendant yelled, "Look out," just before hitting the tree.

Plaintiff further said that from the time she first saw the defendant looking down and brushing his shirt until the car hit the tree, he did not have either hand on the steering wheel and that he did not slacken his speed or apply his brakes. From the time she yelled to defendant to put his hands back on the wheel until the impact occurred, there was an interval of some six to ten seconds.

Defendant testified that he flipped the ashes off his cigarette into the ash tray on the dash board and after that he felt the hot ember from the cigarette, which had fallen between his jacket and shirt. The car was then in the center of the curve in the road. For three or four seconds he tried to trap the ashes with one hand while steering with the other hand. He took both hands off the wheel when his car was 200 feet from the point of impact, unzipped his jacket, and reached for the hot ashes. He trapped the ashes, but they were burning his fingers. The brakes were not applied because he did not think it was "that much of a problem." He heard plaintiff say, "Look out," and when he "looked up like this there was a tree right in the middle." The speed of his car was approximately 30 miles an hour.

Defendant admitted that he had had a drink of vodka at 7 o'clock on the evening of the accident, and that he had the glass from which he had taken the drink in his car when he picked up the plaintiff. She saw the glass and asked him about its contents. He told her that it contained orange juice. When asked on cross examination if he was under the influence of intoxicants when the accident occurred, he answered, "No, sir. Not entirely." Defendant also admitted that he visited plaintiff while she was in the hospital and asked her not to tell the police that he had taken a drink on the night of the accident.

When plaintiff was recalled as a witness, she testified that she did not know that defendant had taken a drink of vodka, and that she had not detected any odor of alcohol. He was "acting kind of silly," but that was not unusual because "he was always cutting up and carrying on."

Defendant argues that momentary inattention and the doing of a reasonable act instinctively performed do not amount to gross negligence.

In support of his argument that momentary inattention does not constitute gross negligence, he cites *Jenkins* v. *Womack*, 201 Va. 68, 109 S. E. 2d 97 (1959); *McDaniel* v. *Wern*, 206 Va. 819, 147 S. E. 2d 158 (1966); *Finney* v. *Finney*, 203 Va. 530, 125 S. E. 2d 191 (1962); *Alspaugh* v. *Diggs*, 195 Va. 1, 77 S. E. 2d 362 (1953); and *Wilsher* v. *Adams, Adm'r*, 208 Va. 406, 158 S. E. 2d 182 (1967). For the principle that the doing of a reasonable act instinctively performed does not constitute gross negligence, he relies on *Hailey* v. *Johnson*, 201 Va. 775, 113 S.E. 2d 664 (1960), where the driver swerved his car to miss some dogs and lost control of the vehicle, which crashed against a tree; and *Rindge* v. *Holbrook*, 111 Conn.

72, 149 A. 231, 232, where a bee flew in the car and stung the driver, resulting in the car leaving the highway and crashing into a fence.

All the cases cited rest upon their particular facts, and are not controlling here. A slight difference in the facts of a case may make a very material difference in the legal result, and this is especially true in a tort case.

As was said in *McDowell v. Dye*, 193 Va. 390, 397, 69 S. E. 2d 459, 464 (1952):

> "Whether the conduct of a person operating an automobile amounts to gross negligence within the meaning of Code, § 8-646.1 depends upon the facts and circumstances surrounding the operation. The element of time incident to the accident must be considered with the surrounding circumstances in determining whether the driver's conduct constitutes gross negligence. One degree of care sufficient under certain circumstances may amount to gross negligence under others. If reasonable men may differ upon the question then a jury problem is presented."

The conduct of the defendant does not as a matter of law fall within the categories of momentary inattention and the doing of an instinctive act reasonably performed. Here defendant's act in flipping the ashes off his cigarette caused a hot ember to fall on his shirt and burn him. His response in trying to extinguish it was a natural reaction. But when he took his hands off the steering wheel and his eyes off the road for a time interval of 6 to 10 seconds, disregarding plaintiff's warning of danger, and allowed his uncontrolled automobile to travel 300 to 350 feet at a speed of 25 miles per hour, without applying the brakes, his conduct amounted to more than momentary inattention and a reasonable response to the distraction. When defendant's entire conduct is considered it shows an indifference to the natural and probable consequences of his acts. Whether the car was being operated in such a manner as to constitute an utter disregard of prudence amounting to the complete neglect of the safety of the plaintiff presents a question upon which reasonable men may disagree. Hence a jury question was presented and not one of law for the court.

Defendant contends that the plaintiff was guilty of contributory negligence or assumption of risk. There is no merit in these contentions.

Defendant says that plaintiff was guilty of contributory negligence

in failing to take over the steering of the car when she realized that defendant was not going to put his hands back on the wheel. Plaintiff's reaction was that of a reasonable person in warning the defendant to put his hands back on the wheel. She was under no duty to take over the steering, and her failure to do so did not make her guilty of contributory negligence as a matter of law.

Defendant contends that plaintiff assumed the risk in riding with him after he had taken a drink of vodka. All the evidence shows that plaintiff did not know defendant had taken a drink. She cannot be held responsible for assuming a risk which she did not know existed.

■ Defendant next contends that the trial court erred in granting instructions 2 and 4-A.

Instruction 2 reads as follows:

"The court instructs the jury that if you believe from a preponderance of evidence in this case that on the occasion in question the defendant Terry was guilty of *deliberate inattention* in the operation of his automobile in such a manner and to such an extent as to constitute an utter disregard of prudence amounting to complete neglect of the safety of the plaintiff, and that such conduct on his part was the sole proximate cause of the collision and the plaintiff's resulting injuries, then you shall find your verdict in favor of the plaintiff." (Emphasis added.)

Defendant's objection to the instruction is directed to the use of the words "deliberate inattention." He says that the words "deliberate inattention" as used in the instruction are paradoxical and antonyms; that one cannot be deliberately inattentive.

The terminology, "deliberate inattention," has been used in many gross negligence cases in a descriptive sense to indicate "want of even scant care" and to distinguish it from "momentary inattention." See, *Chappell* v. *White*, 182 Va. 625, 631, 29 S. E. 2d 858, 860, 861 (1944); *Wilsher* v. *Adams, Adm'r, supra,* 208 Va. at 408, 158 S. E. 2d at 183; *Finney* v. *Finney, supra,* 203 Va. at 533, 125 S. E. 2d at 193; *Lloyd* v. *Green,* 194 Va. 948, 954, 76 S. E. 2d 190, 194 (1953).

We find no reversible error in the use of the phrase objected to, but we do not approve of its use in an instruction defining gross negligence.

■ Instruction 4-A was in the language of the statute applicable to

"Tables of Speed and Stopping Distances". Defendant says the instruction should not have been given because there is no evidence that defendant attempted to stop his vehicle or that the application of brakes would have avoided the accident.

We agree with defendant that there is no evidence that he attempted to stop his vehicle. He said that he did not think the situation in which he found himself "was that much of a problem." But he testified on cross examination that when the ember from the cigarette started burning him he was 200 feet from the point of impact, traveling 30 miles an hour, and indicated that he could not have stopped the car in time to avoid the accident even if he had applied the brakes. The evidence was conflicting as to distances and the speed of the automobile. The undisputed evidence shows that the road and driving conditions were normal. But even if it could be concluded that the proper foundation was not laid to justify the court in granting the instruction, both parties had the benefit of arguing to the jury the questions of speed and stopping distances, which they both relied upon, and under the facts here it was harmless error. See, *Beasley* v. *Bosschermuller*, 206 Va. 360, 366, 143 S. E. 2d 881, 886 (1965); *Shelton* v. *Mullins*, 207 Va. 17, 22, 147 S. E. 2d 754, 758 (1966). *Cf., Cook* v. *Basnight*, 207 Va. 491, 496, 497, 151 S. E. 2d 408, 412 (1966).

Lastly, defendant argues that the court erred in refusing a sudden emergency instruction.

The instruction was properly refused because the defendant was not entitled to it under the evidence. To be entitled to a sudden emergency instruction, one must be free from fault in creating the emergency. Such is not the case here.

For the reasons stated, the judgment is

*Affirmed.*