## Richmond

GENERAL ANCIL DUNCAN, AN INFANT v. LEWIS HOWARD COX,
AN INFANT, ETC.

March 10, 1969.

Record No. 6835.

Present, All the Justices.

*Robert J. Rogers* (*Joseph H. Poff; Woods, Rogers, Muse, Walker & Thornton*, on brief), for plaintiff in error.

*Richard W. Davis* for defendant in error.

CARRICO, J., delivered the opinion of the court.

The infant plaintiff, Lewis Howard Cox, filed by his next friend a motion for judgment against the defendant, General Ancil Duncan. In the motion for judgment, the plaintiff sought to recover damages for personal injuries sustained when the automobile in which he was riding as a guest passenger of the defendant ran off the road and collided with a tree stump.

A jury trial resulted in a verdict in favor of the plaintiff in the sum of $35,000. Final judgment was entered on the verdict. We

granted the defendant a writ of error in which the crucial question presented is whether there was sufficient evidence of gross negligence on the part of the defendant to support the jury's verdict.

The accident in which the plaintiff sustained his injuries occurred sometime after 5:00 p.m. on September 24, 1966, on State Route 787 in Floyd County, 500 to 600 feet west of Indian Valley schoolhouse. Route 787 is an 18-foot wide blacktop road with narrow shoulders, running generally east and west in the area of the accident scene. For traffic proceeding in a westerly direction, the road slopes gently downgrade and curves slightly to the left.

On the afternoon of the accident, the plaintiff, the defendant, and three of their companions engaged in a game of touch football on the playground of Indian Valley school. Before leaving the playground, the plaintiff gave the defendant some chewing tobacco. The five young men then entered the automobile of the defendant, with the latter driving, the plaintiff seated on the right front seat, and Donny Quesenberry seated in the middle. The other two passengers were seated in the rear.

The vehicle had proceeded only a few hundred feet when the defendant brought it to a halt in front of a church to "spit out" his tobacco. When the vehicle was again in motion, the plaintiff asked the defendant if he wanted a piece of candy, and when the latter replied affirmatively, the plaintiff passed the candy to him. Donny Quesenberry, however, intercepted the piece of candy and placed it in his mouth. Then, in the words of the plaintiff, the defendant "started to reach over to get [the candy], and about that time we went off the road."

The vehicle left the road on the right-hand side, 250 feet from the point where the defendant had stopped to "spit out" his tobacco. The plaintiff "hollered at [the defendant] to try to get the car back on the road." The vehicle proceeded off the road for a distance of 90 feet and struck a tree stump located 7 feet from the edge of the road. The plaintiff hit his head on the dash as the result of the collision, causing serious injuries to his nose.

The plaintiff testified that he observed the speedometer before the car ran off the road and stated that the speed was 30 m.p.h. The speed limit in the area was 55 m.p.h.

The defendant contends that the evidence was not sufficient to sustain the charge of gross negligence against him, saying that the

evidence "revealed nothing more than momentary inattention, or lack of ordinary care" on his part.

The plaintiff, on the other hand, contends that the evidence was sufficient to support the jury's finding of gross negligence against the defendant, arguing that the defendant was engaged in a "hassle" with Donny Quesenberry over the candy bar. The plaintiff bases his case upon the proposition that the defendant "deliberately abandoned the operation of his vehicle in an effort to get a piece of candy away from a passenger" and did nothing to avoid the collision with the tree stump after the car ran off the road.

We turn to the record to see whether the proposition upon which the plaintiff relies is supported by the evidence.

The evidence most favorable to the existence of a "hassle" between the defendant and Donny Quesenberry consisted of testimony by the plaintiff who stated that after Donny "stuck [the candy] in his mouth," the defendant "was trying to get the candy back"; by Donny who said that he "took [the candy] and put it in [his] mouth and [the defendant] tried to take it"; and by Gary Quesenberry, one of the passengers seated in the rear of the vehicle, who testified that Donny "reached out and got [the candy] and stuck it in his mouth . . . and [the defendant] was reaching over to get the candy bar back."

Although there is the distasteful suggestion in the foregoing testimony that the defendant made an attempt to retrieve the candy from Donny's mouth, no witness said that such was the case. In fact, there was no evidence that there was any physical contact between the defendant and Donny or that a single word passed between them as the result of the candy episode.

It may be doubted, therefore, that even the evidence most favorable to the plaintiff's proposition was sufficient to serve its intended purpose. But, be that as it may, it is more important to note that the existence of a "hassle" between the defendant and Donny Quesenberry was negated by other portions of the plaintiff's own testimony.

On direct examination, the plaintiff testified that it was when the defendant *started* "to reach over to get" the candy that the car "went off the road." On cross-examination, the plaintiff admitted that no "horseplaying" or "cutting up" occurred in the car. He conceded that the defendant "didn't take his eyes off the road for more than one or two seconds" and that "the whole episode," from the time he offered the candy to the defendant until the car struck the

tree stump, took place "within two or three seconds." And the plaintiff said that before the car left the road, the defendant "had been driving slowly" and that "no one had made any complaint to [the defendant] about his driving."

So too did the plaintiff in his own testimony rebut his present claim that the defendant did nothing to avoid the collision with the tree stump after the car ran off the road. The plaintiff acknowledged, as did all the other passengers, that "as soon as the car went off the road," the defendant "was doing his best to get it back on the road" and "was fighting that steering wheel all the way."

We have here, then, a situation not where a driver "deliberately abandoned the operation of his vehicle," as the plaintiff contends. Rather, the situation is one where the driver, otherwise operating carefully, momentarily diverted his attention from the road to respond to the amenity of a passenger, in this instance the plaintiff himself, and as a result ran off the road and immediately tried, albeit unsuccessfully, to return to the highway. The case is, therefore, distinguishable from the following three cases relied upon by the plaintiff to sustain his allegation of gross negligence against the defendant:

In *Chappell* v. *White*, 182 Va. 625, 29 S. E. 2d 858 (1944), the host-driver suddenly exclaimed "Oh!" and when her passengers looked up, they saw that the vehicle had passed from the right side of the three-lane highway to the extreme left side. The passengers also saw the driver straighten up in the driver's seat, as if she had been leaning to her right, and observed her grab the steering wheel with her right hand. The driver neither applied her brakes nor attempted to turn to the center of the highway, but permitted the vehicle to travel 75 to 90 feet diagonally across the left shoulder until it crashed and turned over. We held that the question of the defendant's gross negligence was for the jury.

In *McDowell* v. *Dye*, 193 Va. 390, 69 S. E. 2d 459 (1952), the host-driver was approaching, at an excessive speed, a sharp curve on a street in Lawrenceville. She ignored the warning of her mother, who was a passenger, to "slow down." The driver then took her hand from the steering wheel and turned to the rear to accept a paper cup containing a soft drink from another passenger, again against her mother's protest to "please wait until you get out of town to drink it." As a result, the vehicle ran off the right side of the highway and struck a light pole. We said that the evidence posed a jury question as to the driver's gross negligence.

In *Goodwin and Reed* v. *Gilman*, 208 Va. 422, 157 S. E. 2d 912 (1967), the host-driver turned his vehicle to the left across a solid line and drove in the wrong lane for a distance of 45 feet, intending to turn left into a filling station, at a point just below a hillcrest which obstructed the driver's view of traffic approaching from the opposite direction. The vehicle was struck by another which came over the hillcrest and which was unobserved by the host-driver until it was "right on top" of him. We held that the evidence supported the jury's finding of gross negligence on the part of the host-driver.

Gross negligence has been defined as "that degree of negligence which shows an utter disregard of prudence, amounting to complete neglect of the safety of another, such as to be shocking to reasonable men." *Rigney* v. *Neauman*, 203 Va. 822, 826, 127 S. E. 2d 403, 406 (1962).

We are of opinion that the actions of the defendant in the case before us do not fall within the just-quoted standard, and that the jury's verdict finding the defendant guilty of gross negligence was not supported by the evidence.

Accordingly, the judgment appealed from will be reversed, and final judgment will be entered here in favor of the defendant.

*Reversed and final judgment.*