# Richmond

GEORGE EDWARD PICKETT KENT *v.* ANNIE MILLER,
AN INFANT, ETC.

January 14, 1937.

Present, All the Justices.

The opinion states the case.

*Parrish, Butcher & Parrish*, for the plaintiff in error.

*Thomas A. Williams* and *L. C. O'Connor*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

George Edward Pickett Kent, defendant in the trial court, Miss Wright, subsequently Mrs. Kent, and Annie Miller, the plaintiff in the trial court, formed a party on the even-

ing of January 24, 1934, seeking amusement and entertainment of the night club variety. They chose the Riverside Club, the doors of which were subsequently closed by police authority, which was in Chesterfield county, and where dancing and eating and drinking were the order.

The moving spirit of the party was the plaintiff for she went to Miss Wright's apartment and had Miss Wright call Kent over the phone for the purpose of having him drive them in his car to the place of *rendezvous*.

As a fit initiatory step toward the hilarity to follow, Kent and Miss Miller took a drink from Kent's bottle at the home of Miss Wright's sister in Richmond. The three sitting on the front seat of Kent's practically new Chevrolet sedan, Kent being under the wheel, Miss Wright sitting next to him and Miss Miller at the right hand door of the sedan, drove to a filling station outside of Richmond. Kent and Miss Wright said that their visit to the filling station was for the declared purpose of purchasing a pint of liquor and that Kent and Miss Miller again regaled themselves by taking a drink. This is denied by Miss Miller and under the circumstances of the case, to be referred to later, her version of the affair must be accepted. From this filling station they drove to the club where they remained until after midnight enjoying the gayeties which the place afforded. And here the parties are again at variance as to the drinking feature of the evening, Kent and Miss Wright saying that they drank at frequent intervals, and Miss Miller alleging that they only took one drink and that she did not consume all of hers.

They left the club sometime after midnight taking the same positions in the automobile on the return trip to Richmond as they had occupied before. Their course to Richmond took them over the Riverside Drive, on which are three curves, the third being a severe one where they made a left-hand turn negotiating a curve which formed an angle greater than a right angle. Approaching this curve from the club, there is a considerable down-grade some 400 feet in length, and the road along this part of it is bumpy and uneven.

Miss Miller's story is that Kent became peeved because Miss Wright danced with another man while they were at the club and that he was in this frame of mind while driving over the road as described; that his anger increased and he drove so fast as to frighten her and cause her to protest several times and to say that if he intended to continue driving like that, please let her get out; that he did not heed her protestations but continued speeding; that he drove around the curve taking the 95 degree angle at a speed of from 45 to 50 miles an hour; that the excessive speed under the curve conditions caused the door of the car to come open and she fell out and was severely injured.

It is not clear from Miss Miller's testimony just where she left the car—whether it was on the curve at the time or beyond.

Mrs. Kent and Mr. Kent testified positively and definitely on this point. They said that when Miss Miller went out of the car they were as much as two city blocks beyond the curve and that Mr. Kent stopped his automobile at once and both of them went around to the rear of the car and in two feet of it, they found Miss Miller lying on the ground. This portion of the testimony for the defendant is uncontradicted for Miss Miller stated that her fall out of the car is the last thing that she remembered.

Miss Miller was assisted into the automobile and they continued on their way to Richmond. Subsequently Miss Miller was removed to a hospital where it developed that she was painfully and severely injured.

But as we view the case it is unnecessary to go further into detail as to the evidence.

Suit was instituted by Miss Miller against Kent which resulted in a verdict for her of $3,000, which was sustained by the trial court.

It must all the while be borne in mind that Miss Miller was a guest in the car of Mr. Kent and in order to recover the burden was upon her to estabilsh *gross* negligence as to him.

As was aptly said in the petition there is no such

thing as negligence in the abstract, or in general, or as sometimes is said, *in vacuo.* Negligence must be in relation to some person, certainly for the purpose it is here set up. What may be negligence as to one person may not be so as to another and what may be *gross* negligence as to one person may be negligence of a lesser degree as to another.

*Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77; *Thomas* v. *Snow,* 162 Va. 654, 174 S. E. 837; *Young* v. *Dyer,* 161 Va. 434, 437, 170 S. E. 737, 739; *Gale* v. *Wilber,* 163 Va. 211, 175 S. E. 739; *Douh* v. *Weaver,* 164 Va. 96, 178 S. E. 794.

In the *Young* v. *Dyer, supra,* case this court said:

"A mere failure to skillfully operate an automobile under all conditions or to be alert and observant and to act intelligently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinary prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable negligence for which defendant would be responsible to an invited guest."

In that case (*Young* v. *Dyer, supra*), the defendant's car left the road and turned over as a result of being driven around the curve at an excessive rate of speed, yet this court held that that did not constitute such gross negligence as would make a host liable to his guest.

It will be noted that in the case we are considering the automobile did not leave the road, did not turn over, did not skid. The only alleged unusual happening was the opening of the right hand front door. The next morning the car was examined by an expert (Birchett) who testified that it was in excellent condition, that the door fitted properly from top to bottom, that the latches and lock worked properly, that "it is impossible for that door to come open unless the latch is opened, because the latch sinks very deeply into the little plate that it sinks into—catches."

The case of *Williams* v. *Lumpkin,* 169 Miss. 146, 152 So. 842, is enlightening here. Indeed the case presents a set of

facts which are strikingly similar to those in the present case. We quote briefly from it as follows:

"The only evidence to sustain the contention that the rate of speed caused the door to come open was that, when the car suddenly swerved, the door came open. But any such swerve as shown in this record, even at the highest speed any witness testified to, would not cause a latched door of a modern automobile of the sedan type to come open. Such a swerve, however, would cause an unlatched door to come open."

So we think the plaintiff, Miss Miller, has utterly failed to establish the necessary fact that Kent was guilty of *gross* negligence.

Concede that the door of the car came open as described by Miss Miller, still it is not an incident or event which could have been foreseen by a reasonably prudent person as likely to happen if the door were latched. If it were not latched it was the omission or fault of Miss Miller, who got in the car on that side after Kent and Miss Wright had taken their seats. *Fowlkes* v. *Southern Ry. Co.*, 96 Va. 742, 32 S. E. 464.

Aside from this, however, the plaintiff gives an account of the accident which is incredible. It is impossible to drive an automobile around a 95 degree curve going at 45 or 50 miles an hour without turning over or going off the road or skidding or some such untoward thing. This is a matter of common knowledge and courts will take judicial notice of it. This court has so said in the case of *Fagg* v. *Carney*, 159 Va. 118, 123, 165 S. E. 419.

It was held in the case of *Norfolk & W. Ry. Co.* v. *Crowe's Adm'x*, 110 Va. 798, 67 S. E. 518, that courts are not required to believe that which is contrary to human experience and the laws of nature or which they judicially know to be incredible, and although a plaintiff in error occupies the position of a demurrant to the evidence, yet if the verdict of the jury is dependent for its support upon the testimony of a witness which is contradicted by the conceded facts in the case, it will be set aside.

This opinion might be extended but without adding to its value or convincingness.

It follows from what we have said that we reverse the judgment of the trial court and enter final judgment for the defendant.

*Reversed.*