# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

RICHARD MILLS SIBLEY v. VAN R. SLAYTON, ADMINISTRATOR, ETC.

March 10, 1952.

Record No. 3896.

Present, All the Justices.

The opinion states the case.

*Easley, Edmunds & Vaughan,* for the plaintiff in error.

*R. Paul Sanford* and *J. William Clement,* for the defendant in error.

SMITH, J., delivered the opinion of the court.

This record is here on a writ of error to review the proceedings of a trial in which Van R. Slayton, administrator of the

estate of Van W. Slayton, deceased, obtained a $10,000 verdict and judgment against Richard Mills Sibley for the wrongful death of plaintiff's decedent, a guest of Sibley, which resulted from an automobile accident.

The decisive question presented is whether the evidence is sufficient to convict the defendant of gross negligence.

At about 10:30 p. m., April 11, 1950, the defendant, an eighteen-year-old youth, accompanied by three teen-age companions, Herman Adkins, John Williamson, and Van. W. Slayton, left South Boston in defendant's one-seated 1949 Ford pickup truck and started for their respective homes.

The defendant turned off U. S. Highway No. 58 and proceeded south on State Highway No. 694 in Halifax county to the home of John Williamson. After the Williamson boy alighted, the defendant turned around and drove back in a northerly direction along that section of State Highway No. 694 over which he had just passed. Van Slayton was seated next to the right door and young Adkins was in the middle. About three miles from Williamson's house the road curves in the shape of an "S". It was about midnight when the truck reached this place, the weather was clear and the road was dry. The defendant was driving within the legal speed limit at between forty-five and fifty miles per hour and made the first or right turn of the "S" without difficulty. The second section of the "S" makes a fourteen degree left turn with a radius of about four hundred feet. Approaching from the south this curve is partially obscured by a small building located on the west side of the road. The defendant reached this curve before he realized it and found he was going too fast to hold the vehicle on the pavement, which was between fifteen and sixteen feet wide at this place. The shoulder along the east or right side of the road was approximately four and one-half feet wide and covered with loose stone. In attempting to make the curve the defendant veered three feet off the hard surface onto the right shoulder and followed the contour of the pavement for thirty-four feet where the right wheel or wheels of the truck hit an inconspicuous chuck hole in the shoulder three feet from the edge of the pavement at the end of a twelve-inch metal culvert running east and west under the hard surface. The defendant released the accelerator, did not apply his brakes, and attempted to get the vehicle back on the pavement. When the truck hit the hole he lost control

and the vehicle continued out of control for fifty-eight feet beyond the culvert where the right front of the truck crashed into a large sweet gum tree standing eight feet from the edge of the hard surface. The truck rebounded off the tree, careened, and came to rest on its left side along the edge of the pavement opposite the tree.

Both passengers had been dozing immediately prior to the collision. As a result of the accident young Slayton died within two hours and the Adkins boy was rendered unconscious for two days.

There was no evidence that either Adkins, John Williamson, or Slayton had objected to the manner in which the defendant had been operating the truck. At the trial Adkins and Williamson testified that the defendant, prior to the accident, had been driving "all right." Adkins also testified that the defendant had been driving "pretty fast", but on cross-examination it was brought out that at the hearing before the trial justice Adkins had testified that the defendant had not been driving in a manner to make him uneasy and he thought the defendant was driving all right.

The defendant lived about five miles from the scene of the accident and, of course, had been over the same section of the highway only a short while before, but he maintained he was not familiar with the road, had traveled it only a few times before, and did not know exactly where the curve was located.

There was no real conflict in the evidence on the trial of this case, although the plaintiff attempted to prove that the right wheel or wheels of the truck did not hit the hole in the shoulder of the road. Originally there had been a concrete head wall or curbing at the end of the culvert, but this wall had been removed leaving a hole about sixteen inches deep and of a width not disclosed by the evidence.

W. W. Williamson, who lived nearby, watched the truck's head lights from his front door as the vehicle rounded the curve and hit the tree and he heard the sound of the crash. He arrived on the scene immediately after the accident and testified that he examined the tracks of the vehicle and they indicated that the truck had hit the hole and made a direct line to the tree. State Trooper C. C. Coates arrived there within two hours after the collision and testified that he thought one wheel of the truck had passed over the hole. The defendant also testified that he

hit the hole. There was no denial of this testimony. The only other evidence on this point was the testimony of a photographer who took pictures of the scene four or five days after the mishap. He did not deny that the wheel or wheels hit the hole, but did say he had not seen the mark showing where the wheel or wheels went into the culvert.

There is only one conclusion that the jury could properly have drawn from this evidence and that is that the right wheel or wheels of the truck hit the hole.

Section 8-646.1 of the Code of Virginia, 1950, enacted in 1938, is a legislative codification of the gross negligence rule established in this State by the case of *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77. Under the provisions of this statute the plaintiff in this case must prove by a preponderance of the evidence that the death of Van W. Slayton was caused or resulted from the defendant's gross negligence or willful and wanton disregard of the deceased's safety.

Whether or not the acts and conduct of the driver of an automobile in a given situation establishes his guilt of gross negligence is ordinarily a question of fact for the jury. But if reasonable men should not differ as to the conclusion, the issue becomes a question of law for the court. *Hill* v. *Bradley,* 186 Va. 394, 43 S. E. (2d) 29.

"We have repeatedly pointed out that gross negligence means something more than lack of ordinary care. In cases like that now before us we have characterized it as, 'an utter disregard of prudence amounting to complete neglect of the safety' of the guest, * * * ,'heedless and reckless disregard of the rights' of the guest * * *, 'conduct which shows an utter disregard of prudence amounting to complete neglect of the safety of another' * * *." *Reel* v. *Spencer,* 187 Va. 530, 535, 47 S. E. (2d) 359. "Putting one's self in the place of the parties, to be gross it should shock fair-minded men." *Carroll* v. *Miller,* 175 Va. 388, 399, 9 S. E. (2d) 322.

The plaintiff contends that the jury was warranted in inferring from the physical evidence that the driver was traveling at an excessive rate of speed. On the subject of speed there were two witnesses, the defendant and W. W. Williamson, both of whom testified that the vehicle was traveling at a moderate rate of speed, not more than forty-five or fifty miles per hour. While undoubtedly the tree was hit with considerable force and the

right side of the vehicle shows the effect of the blow, it is significant that the truck came to rest exactly opposite the tree after striking it a glancing blow. If the truck had been traveling at excessive speed, it is reasonable to assume that it would have slid or rolled some distance from the point of impact before it came to rest. The evidence shows that the speed of the truck permitted the driver to successfully negotiate the first half of the "S" curve without difficulty.

It is true, as we said in *Mitchell* v. *Wilkerson, ante,* p. 121, 67 S. E. (2d) 912, that physical evidence may warrant a finding of greater speed than that fixed by the uncontradicted witness, but such finding must be based on evidence and not on speculation. Here the physical evidence does not raise the estimated speed of the vehicle above that fixed by the witnesses.

It is also contended that the driver was guilty of negligence in failing to keep the car under proper control and in failing to keep a proper lookout. This conclusion is drawn from the fact that the car left the pavement on the curve and was wrecked, but this overlooks the fact that the truck went out of control only after dropping into the hole, a defect in the road which could not be readily seen from the driver's seat. Moreover, another reply to this contention is that the truck was under such control and such lookout was kept as to enable the driver to successfully round the preceding half of the "S" curve, which was no less acute than the curve where the accident occurred. A single act, the evidence discloses, caused the defendant to leave the pavement and drive onto the shoulder and he held to the road until the hole caused him to lose control of the truck.

The plaintiff also contends that the driver of the truck was guilty of violating several statutory duties and that if his single act of negligence, namely, excessive speed under the circumstances and conditions then existing, was not sufficient to justify the jury in finding him guilty of gross negligence, then the speed combined with his failure to keep the car under control and maintain a proper lookout for the conditions of the road, were sufficient to justify the jury in its finding.

In *Mitchell* v. *Wilkerson, supra,* at page 127, our last guest decision, we said this in reference to an erroneous instruction with regard to a number of acts of omission and commission:

" * * * But if we advert to our earlier cases, where the subject is fully discussed, we will see that something more than a mere

breach of two or more statutory duties imposed upon a driver is required in order to sustain a finding that he has been guilty of gross negligence.

"*Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310, was the first case in which we dealt with the subject as to when and under what circumstances a combination of instances of ordinary negligence may constitute gross negligence. In that case we said: '* * * if a number of acts of omission and commission are so combined that reasonable and fair-minded men may differ as to whether the cumulative effect thereof evinces a form of recklessness or a total disregard of all precautions akin to willful and wanton misconduct, it is a question for the jury' whether such negligence amounts to gross negligence. (167 Va., at page 314, 189 S. E. at page 313.) See also, *Wright* v. *Swain,* 168 Va. 315, 318, 191 S. E. 611, 612.''

Here we do not have a combination of instances of ordinary negligence, but at most one act of negligence.

A review of the evidence in this case indicates that at most the defendant was guilty of simple negligence in that he was driving too fast, although within the legal speed limit; that he had been driving carefully all evening and had safely traveled the same stretch of road in the opposite direction a short while before and at about the same rate of speed; and that he negotiated the first turn of the "S" curve without difficulty, and came into the second curve before he realized it. There is no evidence that he was not attentive to his duties, nor is there any evidence that he lost control of the truck before it hit the hole. In fact, the vehicle never went more than three feet from the edge of the hard surface until it hit the hole. It must be remembered that at forty-five or fifty miles per hour the truck would have traveled the distance between the place where it left the road and where it hit the hole in less than one second. Within that time the defendant had little opportunity to get his vehicle back on the pavement.

In *Young* v. *Dyer,* 161 Va. 434, 170 S. E. 737, an action to recover damages for personal injuries, the defendant was driving and at the time of the accident was proceeding along an unfamiliar portion of the highway with the plaintiff who was seated at her right side. The road was a curvy one and the car was running at a speed of about fifty miles per hour. In attempting to round a sharp right hand curve, the car overturned and the plaintiff was severely injured. The highway was not affected

by inclement weather and no circumstances were shown which should have led the defendant to infer that the curve could not be safely negotiated under the conditions prevailing at the time, although the plaintiff did give a warning at about the time the car reached the curve, which was too late to be effective. The jury's verdict for the plaintiff was set aside by the trial court and judgment was entered for the defendant which judgment was affirmed on appeal. In this case Mr. Chief Justice Campbell, at page 440, said: "A mere failure to skilfully operate an automobile under all conditions, or to be alert and observant, and to act intelligently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinarily prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable negligence for which defendant would be responsible to an invited guest." This language has been quoted with approval in *Chappell* v. *White,* 182 Va. 625, 629, 29 S. E. (2d) 858; *Carroll* v. *Miller, supra,* at 396; *Hawkins* v. *Sydnor,* 170 Va. 267, 273, 196 S. E. 619; *Kent* v. *Miller,* 167 Va. 422, 426, 189 S. E. 332; *Doub* v. *Weaver,* 164 Va. 96, 100, 178 S. E. 794; and *McDowell* v. *Dye, ante,* p. 390, 69 S. E. (2d) 459.

This statement of the law, we believe, controls the facts in the case at bar even more strongly than it did in the *Young Case* because in that case there was no accentuating factor in the form of a chuck hole.

A death resulted from this unfortuate accident, but the entire record contains nothing in regard to the driver's conduct or actions that shocks reasonable men and certainly there is nothing to show "an utter disregard of prudence amounting to complete neglect of the safety" of his guest.

For this reason the judgment of the trial court is reversed, the verdict against the defendant set aside and final judgment here entered in his favor.

*Reversed and final judgment.*