# Staunton

HAMILTON B. WOODSON, JR. v. JULIA GERMAS.

September 10, 1958.

Record No. 4801.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Robert R. Huntley* and *E. Waller Dudley* (*Boothe, Dudley, Koontz & Boothe*, on brief), for the plaintiff in error.

*David B. Kinney*, for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

■ Julia Germas, hereinafter referred to as the plaintiff, instituted this action at law against Hamilton B. Woodson, Jr., hereinafter referred to as the defendant, to recover damages for injuries sustained when a car driven by her husband, Charles Germas, in which she was a passenger, collided with a car driven by Woodson. There was a trial before a jury which resulted in a verdict in favor of the plaintiff and upon which the trial court entered judgment. The defendant has appealed claiming that the evidence is insufficient to sustain the verdict.

The plaintiff's case in the court below was, and before us is, predicated upon the claim that the defendant was negligently driving at an excessive rate of speed and that that was a proximate cause of the collision. The sole question submitted to us is whether there is credible evidence to sustain the jury's findings against the defendant on these two issues.

There is little, if any, conflict in the evidence and the decision of the case turns upon what inferences may be properly drawn therefrom. The collision occurred on September 14, 1956, between 10:00 and 11:00 a. m., at the intersection of North Oakland and North Fourth streets in Arlington. Each street is 32 feet wide and paved with asphalt. North Oakland street runs north and south and is level at the intersection. North Fourth street runs east and west and is slightly downgrade to the east. Vehicles on the latter street are required by appropriate signs to stop before entering the intersection. The area is in a residential district and the fixed speed limit is 25 miles per hour. At the time of the collision the streets were dry and the weather clear. Just before the collision the Germas car, a 1956 Plymouth, in which the plaintiff was riding, was proceeding eastwardly on North Fourth street. The Woodson car, a 1956 Chevrolet, was proceeding southwardly on North Oakland street.

The testimony of Germas as to the circumstances of the collision is quite brief. He did not state the speed of his car or that of the Woodson car as they approached the intersection. He said that he did not "notice any stop sign" and did not stop before entering the intersection. He further said that he never saw the Woodson car, and had no "opportunity" to apply his brakes, before the impact.

The plaintiff did not testify as to the circumstances of the collision. Neither did her brother-in-law, another passenger in the car, who was out of the country at the time of the trial.

Woodson, the defendant, testified that just before the collision he was on his way to work as an attendant at a filling station. He lived in the neighborhood, knew that children played in and around North Oakland street, and customarily drove "very cautiously in that area." Indeed, he said that on that morning he had to stop his car in order that children might get out of the street. He was familiar with the intersection and intended to drive through it. He knew that vehicles on Fourth street were required to stop.

He further testified that he approached the intersection at a speed of "approximately" 25 miles an hour. A hedge at the northwest corner, that is, on his right, partly obstructed his view as he approached the intersection. He said that he first saw the Germas car "when it was protruding from the hedge" and when it was 8 to 16 feet away. He (Woodson) was then "approximately right in the intersection, right at the intersection." In this situation, he immediately applied his brakes but was unable to avoid the collision which, he said, occurred in the center of the intersection.

It is undisputed that the front of the Woodson car struck the left side of the Germas car, and that the force of the impact caused the Germas car to veer slightly to its right and the Woodson car slightly to its left. The two cars came to rest in the intersection near the southeastern corner.

Woodson further testified that his brakes were in good condition and the tires new. Police officers who visited the scene shortly after the collision found that both cars had laid down skid marks on the pavement. These marks were measured up to what the officers thought was the position occupied by each car at the moment of the impact. The skid marks made by the respective tires on the Woodson car were stated to be as follows: Right front, 28 feet 3 inches; left front, 31 feet 4 inches; right rear, 23 feet 2 inches; left rear, 26 feet 10 inches.

The skid marks made by the respective tires on the Germas car were stated to be: Right front, 29 feet 5 inches; left front, 7 feet 3 inches; right rear, none; left rear, 8 feet 4 inches.

The skid marks corroborated Woodson's testimony as to the direction in which each car veered after the impact.

The officers testified that beneath the Woodson car there were other skid marks between the front and rear wheels which they thought indicated an additional distance which the front wheels had

skidded after the impact. However, the length of these latter marks was not measured or estimated.

One of the officers testified that when Woodson was asked at the scene how fast he was traveling, he replied that "he did not know," but that he was confident that he was not exceeding what the officer told him was the speed limit. Later he said that Woodson stated that he approached the intersection at approximately 25 miles an hour and was going from 15 to 18 miles at the moment of the impact.

The plaintiff invoked the table of speed and stopping distances specified in Code, 1956 Cum. Supp., § 46-212.2 (Acts 1956, ch. 600, p. 955), in the effort to show that the skid marks made by the Woodson car indicated that just before the impact it was exceeding the 25 miles per hour speed limit. In so far as is here material that section provides:

"§ 46-212.2. *Tables of speed and stopping distances.*—All courts shall take notice of the following tables of speed and stopping distances of motor vehicles, which shall not raise a presumption, in actions in which inquiry thereon is pertinent to the issues:

| SPEED IN Miles Per Hour | Feet Per Second | AVERAGE STOPPING DISTANCES Automobile Brakes (In Feet) | Average Driver Reaction Time (¾ Second) (In Feet) | TOTAL STOPPING DISTANCES: DRIVER AND Automobiles (In Feet) |
|---|---|---|---|---|
| * * * | | | | |
| 20 | 29.34 | 21 | 22 | 43 |
| 25 | 36.62 | 32 | 27 | 59 |
| 30 | 44.0 | 47 | 33 | 80 |
| * * * | | | | |

"The courts shall further take notice that said tables are the result of experiments made with motor vehicles, unloaded except for the driver, equipped with four-wheel brakes, in good condition, on dry, hard, approximately level stretches of highway free from loose material."

A police officer, testifying as an expert on behalf of the plaintiff, was asked to give his opinion of the speed of the Woodson car as

indicated by its measured skid marks, the average stopping distances specified in the statute, the dry condition of the pavement, and the good condition of the brakes. He prefaced his reply by stating that speed and stopping distance should be estimated according to the average length of the skid marks made by the four wheels before the impact, which he fixed at "27 feet some odd inches." Based on that figure, and the stopping distance specified in the statute, he estimated that Woodson "was doing approximately, [I] won't say exactly, but approximately somewhere around 25 miles per hour." On cross-examination he stated that the average of the skid marks, 27 feet, indicated a speed "between 20 and 25" miles per hour.

In its written opinion sustaining the verdict the trial court held that the skid marks justified a finding that the Woodson car was exceeding the speed limit. It reasoned thus:

"* * * The measured skid mark made by his [defendant's] car was 31 feet 4 inches. The unmeasured skid mark was a minimum of 8 feet. The total is 39 feet, 4 inches.

"There was an impact which caused the damage to the cars shown by the pictures and the injuries to the plaintiff. What the force of this impact was, of course, depends upon the speed of the cars. However, there was, from the position of the cars, obviously some braking effect exerted prior to the last eight feet of skid.

"It also appears that the skid marks of the two front wheels were five feet longer than those of the rear wheels. It would seem to follow from this, that upon the application of the brakes, the momentum pitched the weight upon the front wheels and during the first five feet of skid there was friction or braking by the front wheels only.

"The conclusion of the court is:

"That the defendant not only exceeded the average braking distance set forth in the statute but that under the existing conditions, if the defendant had been going at a lawful rate of speed, he could have done better than the average set forth in the table and that he exceeded the above stated speed limit."

We do not agree with that conclusion. The opinion sustains the finding of excessive speed primarily upon the single skid mark of 31 feet and 4 inches made by one of the four wheels of the Woodson car, while the uncontradicted testimony of the plaintiff's own expert witness is that the estimated speed should be based upon the average length of the marks made by the four wheels.

Moreover, to this mark of 31 feet and 4 inches the trial court has added what it terms an "unmeasured" skid mark which it assumed to be "a minimum of 8' feet." While, as has been said, there is evidence that there were skid marks beneath the Woodson car between the front and rear wheels, which indicated that the front wheels had gone an additional distance after the impact, the length of these marks was not measured or estimated. There is no evidence that the wheel which laid down the longest mark up to the moment of impact also laid down an additional mark of 8 feet, or of any known length. Nor do we find in the record any evidence that "the skid marks of the two front wheels were five feet longer than those of the rear wheels."

There is no evidence as to what effect the force of the impact may have had upon the length of these unmeasured marks made thereafter. In questioning the expert as to the estimated speed of the Woodson car, counsel for the plaintiff told him to base his opinion on the measured skid marks and not on "possible skid marks" resulting from the impact.

It is true that physical facts may warrant a finding of greater speed than that fixed by the uncontradicted verbal testimony. *Mitchell v. Wilkerson*, 193 Va. 121, 129, 67 S. E. 2d 912, 916. But unless such physical facts are admitted to be true, they must be established by evidence. As the syllabus in *Scales v. Majestic Steam Laundry*, 114 W. Va. 355, 171 S. E. 899, aptly expresses it, "Physical facts, when relied on to overcome testimony, must be established by uncontroverted evidence, or by evidence so clearly preponderating as to make existence of such facts unmistakable."

In the present case the physical facts relied on to overcome the verbal testimony are not admitted to be true, nor are they clearly established by the evidence. Obviously, they were arrived at in part by speculation or conjecture. A jury's finding thus based on speculation or conjecture should not be sustained. *Sibley v. Slayton*, 193 Va. 470, 475, 69 S. E. 2d 466, 469.

It is argued on behalf of the plaintiff that the jury had the right to disregard the defendant's testimony that he approached the intersection at approximately 25 miles per hour, because he said that when he first saw the Germas car it was protruding from the hedge and only about 8 to 16 feet away from him and yet the skid marks from his car showed that he had applied his brakes when the vehicles were much farther apart than that. This discrepancy

was, of course, a circumstance to be considered by the jury in weighing the defendant's testimony. But if it be assumed that the jury disregarded the defendant's testimony as to his speed, still there is no evidence of excessive speed. The only remaining evidence on the subject is the skid marks and the testimony of the plaintiff's own expert witness that they indicated a speed within the permitted limit.

Our conclusion is that there was insufficient evidence to warrant the jury in finding that the defendant was operating his car at an excessive rate of speed. Since that is the only negligence charged against him the lower court erred in not setting aside the verdict.

For these reasons the judgment will be reversed, the verdict set aside, and a final judgment here entered in favor of the defendant, Woodson.

*Reversed and final judgment.*