Grace Short POND, Plaintiff,

v.

Jimmy HOFFLER and Bernard Hoffler, Defendants and Third-Party-Plaintiffs,

v.

Richard T. SHORT, Third-Party-Defendant.

Civ. A. No. 3056.

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 24, 1961.

J. Edward Moyler and J. Edward Moyler, Jr., Franklin, Va., Willcox, Cooke, Savage & Lawrence, Norfolk, Va. (Richard B. Spindle, III), Norfolk, Va., for plaintiff.

Rixey & Rixey, John F. Rixey, Norfolk, Va., for defendants and third party plaintiffs.

White, Ryan & Reynolds, Allen S. Reynolds, Norfolk, Va., for third party defendant.

WALTER E. HOFFMAN, District Judge.

During the daylight hours of January 23, 1959, at approximately 12:40 p. m., Grace Short Pond was riding as a guest passenger in an automobile driven by her nephew, Richard T. Short, the third-party defendant, when the automobile collided with the left front tire of the tandem wheels of a trailer attached to a tractor being operated by Elton W. Saunders, the agent, servant and employee of the defendants and third-party plaintiffs, Jimmy Hoffler and Bernard Hoffler. Grace Short Pond was seriously and permanently injured. She thereafter instituted an action in this Court against the two Hofflers by reason of diversity of citizenship and the amount in controversy. By appropriate third-party proceedings the defendants, as third-party plaintiffs, instituted their action by way of contribution against Richard T. Short, alleging that, if any liability existed as to the Hofflers, Short was guilty of gross negligence which proximately contributed to the accident and resulting injuries. It is, of course, fundamental that the rights of the third-party plaintiffs can rise no higher than the rights of the original plaintiff and, as Grace Short Pond was required, under the laws of Virginia, to prove gross negligence in any action she may have instituted against her nephew, Richard T. Short, it was incumbent upon the third-party plaintiff to allege and prove gross negligence on the part of Richard T. Short before there can be any recovery by way of contribution.

The trial resulted in a verdict and judgment in the sum of $50,000 in favor of Grace Short Pond against the Hofflers. As to the third-party action, the Court submitted an inquiry to the jury, the answer being dependent upon the jury's action in the suit of Pond v. Hoffler. On this inquiry the jury found in favor of the Hofflers, thus concluding that Short was guilty of gross negligence. Under the Virginia law, joint tortfeasors are equally liable for the amount paid.

Appropriate motions were made for directed verdicts in favor of Short, both at the conclusion of the evidence presented by the third-party plaintiffs and at the termination of all of the evidence in the case. The Court reserved its rulings on these motions and submitted the case to the jury. One exception to the Court's charge as noted by the third-party defendant is pertinent to the case and will be hereafter discussed. Following the jury verdict, the third-party defendant moved to set aside the verdict and to enter judgment in favor of Short, notwithstanding same.

The Court was advised at the time of argument on the motions of the third-party defendant that the judgment in the sum of $50,000 had been compromised and satisfied by the payment of $41,500, including interest and costs. Thus, if the third-party plaintiffs are to prevail, the amount due by way of contribution would be, subject to some adjustment for costs, $20,750, plus interest from the date of payment by the original defendants and third-party plaintiffs.

Treating the evidence and all reasonable inferences therefrom in the light most favorable to the third-party plaintiffs, as required by law, the Court has reached the conclusion that the motion for a directed verdict, made at the conclusion of all of the evidence by the third-party defendant, should have been granted. Accordingly, an order will be entered, upon presentation by counsel, granting said motion, setting aside the verdict of the jury, and entering final judgment in favor of the third-party defendant.

The accident occurred at what is frequently designated as a "Y" intersection at the outskirts of Franklin, Virginia.

Because of the difficulties in describing the nature of the intersection, pertinent portions of a survey or chart are exhibited in this memorandum.

Route 58 is the main road connecting Suffolk and Franklin, and it was on this highway that Saunders, the driver for the Hofflers, was proceeding in a westwardly direction immediately prior to the accident. Saunders was intent on

making a left turn off Route 58 to enter the easternmost angle or leg of the "Y" intersection, and then to proceed southerly along Route 691, up an incline to a railroad overpass, and hence onto the property of Union-Camp Manufacturing Company which was his destination.

Route 58, as it approaches the "Y" intersection of Route 691, is a three-lane highway, appropriately divided by white lines or markings. Each lane is 12 feet in width. The center lane is clearly the proper lane to enter when contemplating a left turn into the eastern leg of the "Y". Saunders was driving his tractor-trailer in the center lane but, when reaching a point approximately 38 feet east of the end of the double white line indicating that traffic should not cross same, Saunders veered his tractor-trailer across the line and commenced his left turn into the eastern leg of the "Y" on Route 691. To describe it otherwise would be to say that Saunders "cut the curve or corner short".

Short was proceeding northwardly on Route 691, which is 23 feet in width but widens considerably at the northernmost leg of the "Y" where it bisects with an extension of the southern line of Route 58. After clearing the overpass, Short faced a sign indicating "Stop Ahead" at the peak of the "Y". Had he contemplated going to Franklin, he would have then veered to his left and entered the western leg of the "Y". As he was planning to go in the direction of Suffolk, he took the eastern leg of the "Y" and proceeded downgrade in the direction of intersecting Route 58 and, assuming that he had remained in his proper lane of travel, Short would then have proceeded out of the "Y" intersection and taken the southernmost lane on Route 58 headed easterly in the direction of Suffolk.

At the time of the accident there were no traffic lights controlling the intersection. With the exception of one small photograph taken shortly after the accident, the presence of a Stop sign is not revealed. However, the jurors were advised, and counsel agreed, that a Stop sign was present on January 23, 1959, and that no traffic control lights had been erected. The larger photographs and the survey show traffic control lights, with the Stop sign removed, but, of course, we must visualize conditions as they existed on the day of the accident. The attached chart fairly denotes the intersection, corrected to reveal the physical facts as they were at the time of the collision. The Stop sign was located at a point designated on the survey as "white wood post." The legal effect of the presence of this Stop sign is perhaps the crux of this case. If it was intended to command a stop as to vehicles making a right turn off Route 691 into Route 58, when the only other traffic possibly affected was a vehicle making a left turn off Route 58 into the eastern leg of the "Y" intersection of Route 691, then, accepting all reasonable inferences in favor of the third-party plaintiffs, the question of gross negligence on the part of Short may have been properly a matter for jury determination. On this issue the Court, over objection of Short, charged the jury as follows:

"If you believe from the evidence in this case that, as Saunders made his left turn into Route 691, he saw the Short vehicle approaching the intersection and approaching the stop sign that was facing Mr. Short, then Saunders had a right to assume that Short would obey the stop sign and stop his vehicle at a point from which, in the exercise of ordinary care, Short could see traffic moving on the highway he proposed to enter; and you are further instructed that Saunders had a right to rely upon this assumption until the contrary appeared, or should have appeared, to him in the exercise of reasonable care on his part.

"The stop sign, of course, was notice to Mr. Short that danger was ahead and that he must stop his vehicle at a point from which, in the exercise of ordinary care, he could see traffic moving on Route 58 and could, in the exercise of reasonable

care, take prudent action to avoid any danger which an effective lookout would disclose.

"Now, I do not suggest to you that the law requires a person to stop right at a particular stop sign. I think you are entitled to some explanation of the reasoning back of the Legislature, the purpose of the section which provides for stopping at stop signs. The purpose of the statute is to require the operator to bring his motor vehicle to a timely stop before entering the travel portion of the other highway. It has sometimes been said that it is to assure a proper lookout by the operator of the emerging vehicle. Now, of course, if a person stops at a stop sign, I think it is reasonable to say that he could never be convicted of a crime because he has a right to assume that the Highway Commission has erected the sign at a proper place for him to stop, but he is not, per se, required to stop exactly at that stop sign.

"If you believe by a preponderance of the evidence in this case that Short failed to stop at the stop sign at the proper time and place as I have just explained to you, that Mr. Short operated his automobile at a speed in excess of the normal safe speed under the circumstances and conditions then existing, and that Mr. Short did not exercise reasonable care to maintain a proper lookout or to keep his motor vehicle under proper control, then Mr. Short was guilty of negligence; and if you further believe by a preponderance of the evidence that any of the above acts, or combination of acts, on the part of Mr. Short amounted to gross negligence which was the sole proximate cause of the accident, then your verdict should be for the Hoffler brothers on the original complaint of Mrs. Pond.

"You are further told that if you believe that Mr. Short was guilty of gross negligence which proximately contributed to the accident, along with the negligence of Hoffler Brothers, then you should find your verdict for Hoffler Brothers on the third-party complaint against Mr. Short, although, in such a situation, you would also find a verdict in favor of Mrs. Pond against Hoffler Brothers."

Upon reflection, the Court is of the opinion that Short was not required to come to a complete stop before entering Route 58 under the peculiar facts of this case. Undoubtedly the sign was a command to stop as to vehicles entering Route 58 for the protection of traffic headed eastwardly along Route 58. Similarly, if Short had contemplated making a left turn at Route 58 and, after crossing two lanes of travel, was intent upon heading westwardly on Route 58, he would have been required to stop as he would then be crossing Saunders' lane of travel. Can it be said, however, that the requirement to stop existed as to approaching traffic making a curve to the left?

The Stop sign was located at a point approximately 25 feet from the southern edge of Route 58, as said southern line is extended, when measured at right angles to the extension of said line. Due to the curving line of Route 691 as it approaches the intersection of the extension of the southern line of Route 58, the sign was located approximately 55 feet southwest of the point where the extension of the southern line of Route 58 bisected the eastern line of the eastern leg of the "Y" of Route 691. Counsel agree that, under Virginia law, the obligation, if any, to stop did not require Short to stop right at the Stop sign; that the purpose of the statute is to compel the operator to stop at some point before entering the travel portion of the other highway in order to assure a proper lookout. Umberger v. Koop, 194 Va. 123, 72 S.E.2d 370. Therefore, in this case, even if the sign made it mandatory upon Short to stop, he could have complied with the mandate of the statute by stopping at some point between the sign and

the extension of the southern line of Route 58.

Short admits that he never came to a complete stop. As he progressed along the upper portion of the downgrade of the eastern leg of the "Y", he saw the tractor-trailer unit coming around a bend in Route 58 which was at least several hundred feet away and perhaps as much as 500 yards, at which time the tractor-trailer was moving into the center lane. Short proceeded down the incline and looked to his left for traffic approaching from the West on Route 58. He noticed a tractor-trailer headed East on Route 58 which made a right turn into the western leg of the "Y". No other traffic was involved with the exception of an unknown vehicle proceeding West on Route 58 which continued on its path directly into Franklin, and which was apparently in the extreme northern lane of Route 58. Short continued looking to his left until just prior to entering Route 58 and, after assuring himself that no traffic was approaching from his left, he again looked to his right, at which time the front end of the Hoffler tractor-trailer was approximately five feet ahead of him and was in the process of making a left turn into the eastern leg of the "Y". The front portions of the two approaching vehicles passed each other successfully but, due to the nature of the turn negotiated by Saunders, the left front tandem wheel of the trailer came in contact with the left front corner of Short's vehicle at the headlight. The impact threw Short's automobile in a southeasterly direction, a distance of approximately 38 feet and completely off the highway.

The point of impact occurred on Route 58 at a point approximately 3 to 4 feet North of an extension of the southern line of Route 58. It is conceded that Short was, at all times, in his proper lane of travel, and that the trailer was in Short's lane at the time and point of impact. It is also conceded that, with an estimated additional foot to spare, the two vehicles would have cleared each other. It follows that, if Short had stopped his vehicle at some point prior to crossing the imaginary line marking an extension of the southern line of Route 58, the accident would not have occurred. Short admits that, at the slow speed he was then traveling, he could have stopped his automobile in a "matter of inches;" that had he realized that the trailer was invading Short's side of the road, he probably had sufficient room to his right on the paved portion of the highway to clear the trailer.

While Short estimates his speed at 3 to 4 miles per hour immediately prior to the impact, the occupant of an automobile following Short fixes the speed at from 15 to 20 miles per hour. Whatever the speed, it was certainly not excessive to the point of being gross negligence unless Short was required to stop by the presence of the Stop sign. Indeed, the slower the speed of the Short automobile, the more favorable it is for the Hofflers as Short was in a better position to stop or otherwise avoid the accident if proceeding at the more cautious speed.

Saunders estimates the speed of the tractor-trailer at between 15 and 20 miles per hour; he states that he gave a left turn signal light before commencing his turn; he indicates that he first saw Short's automobile when it was about 20 feet South of the Stop sign, at which time he intimated that Short was moving at between 10 and 15 miles per hour. Saunders admitted that the wheels of the trailer went to the left of the double white lines as he was making the turn, his contention being that it was impossible to negotiate the turn in any other manner, a statement of fact that is contradicted by the State Trooper who saw the same truck and driver thereafter negotiate a turn without crossing the double white line. As he started making the turn, Saunders noticed Short coming down the hill and looking westwardly in the direction of Franklin; he expected Short to stop but, when he failed to do so, Saunders sounded his battery horn at which time Short was about even with the cab of the tractor.

The State Trooper identified skid marks from the tractor-trailer, with 3 feet having been left by the right side of the tandem unit of the trailer and 14 feet having been left by the left rear wheels of the trailer. All 14 feet of skid marks from the left wheels were located in Short's lane of travel at a distance of from 3 to 4 feet from the white line.

Under the law of Virginia gross negligence has been defined as that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another such heedless and reckless disregard of his rights as to be shocking to reasonable men". Crabtree v. Dingus, 194 Va. 615, 618, 74 S.E.2d 54, 56; Reel v. Spencer, 187 Va. 530, 535, 47 S. E.2d 359, 361; Kennedy v. McElroy, 195 Va. 1078, 81 S.E.2d 436, 439. Ordinary negligence and gross negligence differ in degree, and whether gross negligence has been proved depends upon the facts and circumstances in each case, and each case is governed by its own facts. Kennedy v. McElroy, supra. Ordinarily the issue is one for the jury, and it becomes a question of law for the Court only when reasonable men should not differ as to the proper conclusion to be drawn from the evidence. Alspaugh v. Diggs, 195 Va. 1, 77 S.E.2d 362. There are, however, many instances in which the trial judges, and, indeed, the Supreme Court of Appeals of Virginia, have set aside jury verdicts on findings of gross negligence. Sibley v. Slayton, 193 Va. 470, 69 S.E.2d 466; Hill v. Bradley, 186 Va. 394, 43 S.E.2d 29; Keen v. Harman, 183 Va. 670, 33 S.E.2d 197; Carroll v. Miller, 175 Va. 388, 9 S.E.2d 322; Doub v. Weaver, 164 Va. 96, 178 S.E. 794; Kent v. Miller, 167 Va. 422, 189 S.E. 332; Alspaugh v. Diggs, supra, and others too numerous to cite.

Stripped of the requirement to stop at or near the Stop sign, there is no evidence of gross negligence in this case. Reasonable men could not differ on this point. Even if we assume that it was mandatory upon Short to stop in obedience to the sign, it is at least doubtful,

under the peculiar facts of this case, that a jury question on gross negligence has been presented, although, on this point, the case of Remine v. Whited, 180 Va. 1, 21 S.E.2d 743, stands for the proposition that at a right angle intersection, during daylight hours, the driver of an automobile loaded with women and children was guilty of gross negligence in stopping at a Stop sign and then proceeding across the intersection without looking, when struck by another vehicle approaching on an arterial street. We must presume that if the Stop sign was intended to protect the class of traffic making a left turn off Route 58 into the eastern leg of the "Y" of Route 619, a jury question as to gross negligence is properly presented under Remine v. Whited, supra.

It is argued that Short was inattentive. It is too well settled that casual inattention is not gross negligence, Carroll v. Miller, supra; Young v. Dyer, 161 Va. 434, 440, 170 S.E. 737, 739, and particularly is this true where the vehicle at all times remained on its proper side of the highway. Counsel for the Hofflers argue that Short's inattention was "deliberate" because he admits that he intentionally looked to his left as he proceeded down the incline on the eastern leg of the "Y". Looking to his left is what Short was required to do in order that he could be advised of any eastbound traffic on Route 58. While the Virginia court has, at times, liberally interpreted the term "deliberate inattention," Chappell v. White, 182 Va. 625, 29 S.E.2d 858, it is a far cry to say that one is "deliberately inattentive" when one looks where he is required to look and, at the same time, maintains his vehicle in the proper lane of travel. Cf. McDowell, by Gravatt v. Dye, 193 Va. 390, 69 S.E.2d 459.

Nor do we believe that the Virginia doctrine holding that where a number of acts of omission and commission are so combined that reasonable and fair-minded men may differ as to whether the cumulative effect thereof evinces a form of recklessness or a total disregard of

all precautions, is applicable to the facts of this case. We find no fault with this statement of law and it has been applied in Drumwright v. Walker, 167 Va. 307, 189 S.E. 310, and other cases. The doctrine is somewhat restricted by the more recent case of Mitchell v. Wilkerson, 193 Va. 121, 127, 67 S.E.2d 912, 915, where the court said:

"But if we advert to our earlier cases, where the subject is fully discussed, we will see that something more than a mere breach of two or more statutory duties imposed upon a driver is required in order to sustain a finding that he has been guilty of gross negligence."

We are told that, in addition to being inattentive, Short could have veered his automobile to his right and, while remaining on the hard surface, would have missed the truck. These are arguments in retrospect and, moreover, there was no obligation upon Short to drive his vehicle with its right wheels on the extreme right edge of the paved roadway. He, of course, was required to keep to the right of the center of the highway, but to hold him guilty of ordinary negligence —not to speak of gross negligence—under such circumstances would impose upon him the duty to act *in extremis*. Furthermore, there is nothing in this record justifying the assumption that Short knew, or should have known, that the trailer would not successfully negotiate the curve in the same manner that the tractor did. The sounding of the horn by Saunders came at a time when any action on Short's part would have been ineffective and, in this respect, the facts differ from those in Simmons v. Craig, 199 Va. 338, 99 S.E.2d 641, 645.

The Court holds that, without consideration of the legal effect of the Stop sign, there is not the slightest shred of evidence justifying a finding of gross negligence. This is said with due regard to the fact that the Court of Appeals for the Fourth Circuit has taken ordinary negligence actions arising under Virginia law and applied the liberal rule of negligence and quantum of proof as established in cases instituted under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. and Jones Act, 46 U.S. C.A. § 688. See Doggett v. Atlantic Holding Corporation, 4 Cir., 239 F.2d 156, 159.

We advert to a further discussion of the effect of the Stop sign. In Morris v. Dame's Ex'r, 161 Va. 545, 171 S.E. 662, 669, it was held that the failure to give a signal required by statute cannot be actionable negligence as to any particular person unless the facts and circumstances of the case are such that the duty to give the signal has become a particular duty owing to that person as an individual. It is said:

"For the general duty imposed by the statute to become a particular duty owing to a particular person, he must be in a position which, under a reasonable construction and interpretation of the statute, brings him within the particular class of persons for whose protection from injury these provisions of it were enacted. * * *

"Under a reasonable construction of a statutory provision such as those here under consideration, when no practicable or reasonable degree of care and diligence for the safety of another would call for the performance of an act required thereby, no duty to do the act arises to him as an individual."

These principles are enunciated in Powell v. Virginian Ry. Co., 187 Va. 384, 46 S.E.2d 429, wherein the automobile driver proceeding along the middle of a highway, in violation of the statute, struck a freight car left unattended and unlighted on the railroad track at a place where there was sufficient room to pass to the rear of the freight car if the automobile driver had been wholly on his right side of the highway.

In Hamilton v. Glemming, 187 Va. 309, 46 S.E.2d 438, 442, referring to the statutory requirement for vehicles to travel

on the right side of the highway, the court cites with approval 38 Am.Jur.. Negligence, p. 834, § 163, as follows:

"To afford a right of action for injury from the violation of a statute or ordinance, the complainant's injury must have been such as the statute or ordinance was intended to prevent. If none of the consequences which the enactment was designed to guard against have resulted from its breach, such a breach does not constitute an actionable wrong, even though some other injurious consequence has resulted. It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him."

Counsel agree that there is no Virginia case in point on the facts. The Hofflers urge that the purpose of the Stop sign was to control the entire intersection. If so, this would constitute an open invitation to all drivers making a left turn off Route 58 into the eastern leg of the "Y" to cut the curve or corner.

More directly in point is Hollomon v. Hopson, 45 Ga.App. 762, 166 S.E. 45, 46, where we note:

"The rule that the operator of a motor vehicle shall give the right of way to an operator approaching from the right on an intersecting highway (Ga.Laws 1927, pp. 226, 236, § 12(g)) is intended to avoid collision by automobiles whose proper courses would intersect or converge, and has no application where the vehicles are moving in opposite directions, as, for instance, where each will turn into and move in a reverse course along the portion of the highway over which the other has just passed. Accordingly, where two vehicles, simultaneously and practically at right angles to each other, were approaching a sharp curve, but each was to travel in the opposite direction along the road over which the other had just passed, the operator of the vehicle to the left of the other in approaching such curve was under no duty to yield the right of way to the operator approaching on his right; and this is true notwithstanding the highway traversed by these vehicles was intersected by another public road, which connected therewith at the outer edge of the curve, and which extended almost in a straight line with the portion of the highway traveled by the operator on the left as he approached the curve and intersection."

■ Short and Saunders were admittedly turning into and moving along a reverse course over which the other had just passed. Whether the duty, if any, was owed to Mrs. Pond or to Saunders is of no consequence. In the opinion of the Court, Short was not required to stop at any point between the Stop sign and the extension of the southern line of Route 58 under the facts here presented. That he was otherwise under a duty to operate his vehicle with due care is conceded, but when we eliminate the requirement to stop, nothing remains upon which reasonable men could possibly differ in determining whether Short was guilty of gross negligence. The Court erred in charging the jury to the contrary, but a new trial is unnecessary as the Court would be compelled to direct a verdict in any event.

Counsel for the third-party defendant will prepare and present an appropriate order.